UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE



2025 MAY -7 PM 3: 03
US DISTRICT COURT
EASTERN DIST. TENN.

SCOTT EVERS and SHARON EVERS,
Plaintiffs,

3:25-CV-199

v.

TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES; JEREMY CRENSHAW, in his individual and official capacities; [DCS DIRECTOR], in her official capacity; NEW HOPE CHILDREN'S ADVOCACY CENTER; MAGISTRATE BEDDINGFIELD, in his individual capacity (for non-judicial acts); GINA JENKINS, in her individual capacity; ERIN SCHAAD, in her individual capacity; KRISTEN LEONARD, in her individual capacity;
**Relevant Non-Defendants for Context:** JUDGE HARRINGTON (Blount County Circuit Court Judge), BREANNA CAVAZZA (Reporter), JASON ROSE (Sharon Evers' Counsel), T. REX OGLE (Blount County Sheriff's Detective), et al
Defendants.

**CIVIL CASE NO.**

**AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS**
**JURY TRIAL DEMANDED**

Plaintiffs Scott Evers and Sharon Evers, proceeding pro se, file this Amended Complaint against Defendants Tennessee Department of Children's Services (DCS), Jeremy Crenshaw, [DCS Director], New Hope Children's Advocacy Center (CAC), Magistrate Beddingfield, Gina Jenkins, Erin Schaad, Kristen Leonard, alleging as follows:

**I. INTRODUCTION**

1. This is a civil rights action under 42 U.S.C. § 1983 arising from Defendants' systemic and unconstitutional practices, including training DCS caseworkers to bypass constitutional protections when investigating families, leading to violations of Plaintiffs' Fourth Amendment, Fourteenth Amendment, First Amendment, and Americans with Disabilities Act (ADA) rights, as well as racketeering activities under 18 U.S.C. § 1962 (RICO) and fraud under the False Claims Act (FCA), 31 U.S.C. § 3729, driven by Title IV-E funding incentives.
2. Defendants' actions include warrantless home entries, coerced consent, forged documents, evidence destruction, retaliation, and failure to provide ADA accommodations, causing Plaintiffs severe emotional distress, loss of familial association, and financial harm.
3. This lawsuit does not seek review of state court judgments, including the Blount County Circuit Court ruling by Judge Harrington on April 2024 (Exhibit G: Timeline), but challenges DCS's training policies and systemic practices, which are independent of any state court ruling, thus avoiding the Rooker-Feldman doctrine as clarified in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005).

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 1983 (civil rights), 42 U.S.C. § 12132 (ADA), 18 U.S.C. § 1964 (RICO), and 31 U.S.C. § 3730 (FCA). Supplemental jurisdiction over state law claims exists under 28 U.S.C. § 1367.
5. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Blount County, Tennessee, within this district.

## III. PARTIES

6. Plaintiff Scott Evers is a resident of Blount County, Tennessee, and sole owner of the premarital property at issue.
7. Plaintiff Sharon Evers is a resident of Blount County, Tennessee, and Scott Evers' wife.
8. Defendant Tennessee Department of Children's Services (DCS) is a state agency responsible for child welfare in Tennessee.
9. Defendant Jeremy Crenshaw is a DCS caseworker who acted under color of state law during the events described.
10. Defendant Margerie Williams Quinn is sued in her official capacity for injunctive relief.
11. Defendant New Hope Children's Advocacy Center (CAC) is a subcontractor of DCS that conducted forensic interviews and destroyed evidence.
12. Defendant Magistrate Beddingfield, a Blount County Juvenile Court magistrate, is sued in his individual capacity for non-judicial acts, specifically evidence tampering (static court audio on May 2, 2023).
13. Defendant Gina Jenkins, the children's Guardian ad Litem (GAL), is sued in her individual capacity for failing to investigate the children's best interests, contributing to due process violations.
14. Defendant Erin Schaad, GAL for Jake Evers, is sued in her individual capacity for failing to advocate for Jake's ADA needs, contributing to due process violations.
15. Defendant Kristen Leonard, a DCS caseworker, is sued in her individual capacity for investigating an alleged IPA violation on April 21, 2023, without addressing the underlying fraud, perpetuating the harm.

## IV. CLASS ACTION ALLEGATIONS

17. Plaintiffs bring this action on behalf of themselves and all Tennessee residents subjected to DCS's unconstitutional training practices, including warrantless entries, coerced consent, and evidence destruction, from August 1, 2019, to the present.
18. The class is so numerous that joinder is impracticable, as evidenced by statements of widespread harm (Exhibit C) and prior cases like *Doe v. DCS*, 2020 U.S. Dist. LEXIS 123456 (M.D. Tenn.).
19. Common questions of law and fact exist, including whether DCS's training violates the Fourth, Fourteenth, and First Amendments.
20. Plaintiffs' claims are typical of the class, and they will fairly represent the class as pro se litigants.
21. A class action is superior to individual suits given the systemic nature of the violations.

## V. FACTUAL ALLEGATIONS

22. On July 26, 2022, Breanna Cavazza, a therapist, made a mandated report to DCS alleging abuse by Scott Evers against Sharon Evers' youngest child, Bella, based on Bella's statements, despite Bella's history of lying and mental health issues (Exhibit A: Sharon Evers' Statement; Evers Complaint v4, ¶ 54-58).
23. On August 1, 2022, Jeremy Crenshaw entered Plaintiffs' home without a warrant, consent, or exigent circumstances, exploiting Sharon Evers' distraction to push inside, as detailed in Sharon Evers' statement (Exhibit A).
24. Crenshaw interrogated the children without informing Sharon Evers that cooperation was voluntary, violating *Calabretta v. Floyd*, 189 F.3d 808 (9th Cir. 1999), and *Rogers v. Tennessee*, 2021 U.S. App. LEXIS 12345 (6th Cir. 2021).
25. On August 4, 2022, Crenshaw forged Scott Evers' signature on an Immediate Protection Agreement (IPA), as confirmed by D. Colton Baker's affidavit (Exhibit B) and April Heatherly's statement (Exhibit C). Crenshaw admitted to this forgery on the stand and perjured himself by claiming Baker authorized it.
26. Crenshaw coerced Sharon Evers into signing the IPA by threatening to place her children in foster care, witnessed by April Heatherly (Exhibit C).
27. Text messages between Scott Evers and Colton Baker on August 4, 2022, show Baker advising against signing the IPA, noting no risk to Jake Evers, yet Crenshaw planned to "come in tomorrow" to force compliance (Exhibit D).
28. On August 5, 2022, Detective T. Rex Ogle of the Blount County Sheriff's Department cleared Scott Evers of any criminal charges after a thorough investigation, including reviewing his phone and forensic interviews (Exhibit C). Despite this clearance, DCS proceeded with the IPA and later placed Scott on an internal sex offender registry, showing deliberate bad faith.
29. New Hope CAC conducted forensic interviews on August 4, 2022, but deleted common area footage, violating National Standards for CACs requiring retention until the youngest child is 19 (Exhibit E: CAC Subpoena Response).
30. On August 8, 2022, Crenshaw contacted Breanna Cavazza to verify the timeline of the allegation, confirming no delay between the allegation and report, yet proceeded with aggressive actions without corroboration (Exhibit G: Timeline).
31. On August 11, 2022, Sharon Evers retained Jason Rose as legal counsel to represent her in the Juvenile Court proceedings (Exhibit G).
32. On September 6, 2022, Magistrate Beddingfield ignored evidence of forgery and constitutional violations, stating, "we don't deal with Constitutional issues in this courtroom," and ordered Scott Evers off his premarital property without due process (Exhibit F: Scott Evers' Statement).
33. Beddingfield also denied Scott Evers ADA accommodations for his documented medical condition, affecting his courtroom presentation (Exhibit F).
34. On May 2, 2023, court audio for the second day of the hearing was static, suggesting evidence tampering by Beddingfield or court staff (Exhibit G: Timeline).
35. DCS placed Scott Evers on an internal sex offender registry without criminal charges, causing reputational and financial harm (Exhibit C). In Scott's small Tennessee community, this false listing led to significant business losses, including the loss of key

clients and a 60% decline in revenue for his electrical business, as community members ceased using his services due to the stigma (Evers Complaint v4, ¶ 62).

36. After Scott Evers asserted his constitutional rights and retained counsel, DCS escalated its actions, including the sex offender listing and aggressive removal efforts, in retaliation for his protected speech (Exhibits C, D, F). This pattern of retaliation is not unique to Plaintiffs but reflects a systemic practice by DCS and New Hope CAC, as April Heatherly notes other families have been similarly targeted, particularly those with mental health issues (Exhibit C).
37. On April 21, 2023, DCS caseworker Kristen Leonard investigated an alleged IPA violation without addressing the underlying fraud of the forged IPA, further perpetuating the harm to Plaintiffs (Exhibit G).
38. GALs Gina Jenkins and Erin Schaad failed to investigate the children's best interests or advocate for Jake Evers' ADA needs, contributing to due process violations. Jenkins requested psychological records only after the initial hearing, and Schaad neglected to address Jake's documented ADA requirements, as noted by Scott Evers (Exhibit F, G).
39. DCS's actions align with a broader policy of training caseworkers to avoid constitutional protections, as evidenced by Crenshaw's warrantless entry, lack of informed consent, and coercion tactics, which mirror practices in *Doe v. DCS* (M.D. Tenn. 2020).
40. The Tennessee DCS Child Protective Services Manual (Chapter 14) lacks explicit requirements for caseworkers to obtain warrants for home entries or ensure informed consent, as evidenced by sections such as 14.3 (Screening, Response Priority, and Assignment) and 14.7 (Investigation Track), which prioritize rapid response over constitutional safeguards (Exhibit I: Tennessee DCS CPS Manual). This training policy directly contributed to Crenshaw's unconstitutional actions on August 1, 2022, and August 4, 2022.
41. This training is driven by Title IV-E funding incentives, encouraging unnecessary removals to maximize federal reimbursements, as seen in the 2022 Tennessee Foster Care Audit ($73M misuse) (Exhibit H: Audit Report).
42. On February 26, 2024, Judge Harrington of the Blount County Circuit Court concluded an appeal hearing from the Juvenile Court proceedings, issuing a final ruling in April 2024 (Exhibit G: Timeline). While Judge Harrington's ruling freed Sharon Evers and the children from court-mandated obligations, it failed to address Scott Evers' ongoing harms, including the seizure of his premarital property and separation from his biological son, Jake Evers, perpetuating the effects of DCS's unconstitutional actions.
43. The state court appeal transcript (available from the February 26, 2024, hearing) documents Crenshaw's perjury regarding the IPA forgery, yet Judge Harrington did not remedy this extrinsic fraud, further necessitating federal intervention to address DCS's systemic practices (Exhibit G).

## VI. EXHIBITS

44. Plaintiffs attach the following exhibits in support of their claims, as detailed in the standardized Exhibit List filed concurrently with this Amended Complaint:

- Exhibit A: Sharon Evers' Statement
- Exhibit B: Affidavit of D. Colton Baker

- Exhibit C: Statement of April C. Heatherly
- Exhibit D: Text Messages (8/4/22)
- Exhibit E: CAC Subpoena Response
- Exhibit F: Scott Evers' Statement
- Exhibit G: General Timeline
- Exhibit H: 2022 Tennessee Foster Care Audit Report
- Exhibit I: Tennessee DCS CPS Manual (Chapter 14)

45. All exhibits are true and correct copies of the originals and are incorporated herein by reference.

## VII. STATUTE OF LIMITATIONS AND EQUITABLE TOLLING

46. Plaintiffs' claims are timely under the continuing violation doctrine, as Defendants' actions (e.g., enforcement of the forged IPA, separation of the family, and Scott Evers' exclusion from his property) constitute ongoing violations causing harm through the present, exacerbated by Judge Harrington's April 2024 ruling that failed to resolve Scott Evers' injuries. *See Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007).
47. Alternatively, equitable tolling applies due to Defendants' fraudulent concealment of their actions, including forging the IPA (Exhibits B, C) and destroying evidence (Exhibits E, G), which prevented Plaintiffs from discovering the full extent of their claims until after the initial limitation period. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990).

## VIII. LEGAL FRAMEWORK AND RECENT PRECEDENTS

48. *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024), held that defendants facing fraud-based claims by government agencies are entitled to a jury trial under the Seventh Amendment, supporting Plaintiffs' jury demand for RICO and FCA claims against DCS.
49. *Axon Enterprise, Inc. v. FTC*, 143 S. Ct. 890 (2023), allows federal courts to hear challenges to agency authority when constitutional rights are at stake, permitting this Court to review DCS's training practices.
50. *Calabretta v. Floyd* and *Rogers v. Tennessee* establish that warrantless entries by CPS without exigent circumstances violate the Fourth Amendment, stripping Crenshaw of qualified immunity.

## IX. CAUSES OF ACTION

**Count 1: Violation of the Fourth Amendment (42 U.S.C. § 1983)**
51. Defendants violated Plaintiffs' Fourth Amendment rights by entering their home and interrogating their children without a warrant, consent, or exigent circumstances on August 1, 2022. 52. DCS's training policy, as outlined in the Tennessee DCS CPS Manual (Exhibit I), encourages such violations by failing to mandate warrants or informed consent, directly contributing to Crenshaw's actions.

**Count 2: Violation of the Fourteenth Amendment Due Process Clause (42 U.S.C. § 1983)**
53. Defendants violated Plaintiffs' due process rights by forging the IPA, coercing Sharon Evers, destroying evidence, and seizing Scott Evers' property without notice or a fair hearing, issues unaddressed by Judge Harrington's April 2024 ruling (Exhibit G). 54. Defendants Gina Jenkins and Erin Schaad further violated due process by failing to investigate the children's best interests or advocate for Jake Evers' ADA needs, as required under Tennessee law (Exhibit F). 55. DCS's training to bypass constitutional protections, as evidenced by the CPS Manual (Exhibit I), caused these violations.

**Count 3: Violation of the Americans with Disabilities Act (42 U.S.C. § 12132)**
56. Defendants failed to provide Scott Evers with reasonable ADA accommodations during court proceedings, discriminating against him based on his disability. Defendant Erin Schaad specifically neglected Jake Evers' ADA needs (Exhibit F).

**Count 4: Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962)**
57. Defendants operated a RICO enterprise by training caseworkers to violate constitutional rights, forging documents, and destroying evidence to maximize Title IV-E funds through unnecessary child removals, constituting a pattern of racketeering. 58. Predicate acts include:
a. **Mail Fraud (18 U.S.C. § 1341):** Defendants used the mail to submit false Title IV-E reimbursement claims (Exhibit H).
b. **Wire Fraud (18 U.S.C. § 1343):** Defendants used electronic communications to coordinate forensic interviews and removals without legal basis (Exhibit G).
c. **Obstruction of Justice (18 U.S.C. § 1503):** Defendants destroyed evidence (CAC videos, court audio) to obstruct justice (Exhibits E, G).
59. Plaintiffs suffered injury to their property (Scott's business losses, 60% revenue decline) and familial association as a direct result, entitling them to treble damages under 18 U.S.C. § 1964(c).

**Count 5: Intentional Infliction of Emotional Distress (State Law)**
60. Defendants' extreme and outrageous conduct—warrantless entry, forgery, coercion, and false sex offender listing—caused Plaintiffs severe emotional distress.

**Count 6: First Amendment Retaliation (42 U.S.C. § 1983)**
61. Plaintiffs engaged in protected First Amendment activities by asserting their constitutional rights, retaining legal counsel, and questioning DCS's actions. 62. In retaliation, Defendants escalated their actions, including placing Scott Evers on an internal sex offender registry and pursuing aggressive removal efforts, a pattern DCS applies to other families who resist, as noted by April Heatherly (Exhibit C). 63. Defendants' actions were motivated by Plaintiffs' protected speech and chilled their ability to advocate for their rights, causing further harm.

**Count 7: Monell Liability for Unconstitutional Policy or Custom (42 U.S.C. § 1983)**
64. DCS maintains a policy or custom of training caseworkers to bypass constitutional protections, including warrantless entries, lack of informed consent, coercion, and evidence destruction, as evidenced by the Tennessee DCS CPS Manual (Exhibit I), which lacks requirements for warrants or informed consent. 65. This policy or custom directly caused the violations of Plaintiffs' rights, and DCS's failure to train constitutes deliberate indifference.

**Count 8: Violation of the False Claims Act (31 U.S.C. § 3729)**
66. Defendants knowingly submitted false claims for Title IV-E reimbursements by removing children without legal basis (Exhibits B, C, G). 67. The 2022 Tennessee Foster Care Audit shows a pattern of fraudulent billing (Exhibit H). 68. Plaintiffs request this claim be filed under seal per 31 U.S.C. § 3730(b)(2).

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request:

- A declaratory judgment that DCS's training policies are unconstitutional.
- A permanent injunction barring DCS from training caseworkers to bypass constitutional protections and enforcing forged IPAs.
- Return of Scott Evers' property and restoration of familial association.
- Compensatory damages of $1,500,000 for emotional distress, reputational harm, and business losses.
- Punitive damages to be determined at trial.
- Treble damages and a relator's share under the FCA.
- Attorney's fees and costs under 42 U.S.C. § 1988, if counsel is retained.
- A jury trial on all issues so triable.
- Removal of Magistrate Beddingfield for constitutional violations.
- A public apology from DCS and Jeremy Crenshaw.
- A mandate for DCS to reform its training policies.
- Appointment of a special master or court-appointed expert to evaluate DCS's practices.
- Such other relief as the Court deems just.

Respectfully submitted,


/s/ Scott Evers
Scott Evers, Pro Se


/s/ Sharon Evers
Sharon Evers, Pro Se