# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

SCOTT EVERS, *et al.*,                )
                                      )
  *Plaintiffs*,             )  Case No. 3:25-cv-199
                                      )
v.                                    )  Judge Atchley
                                      )
TENNESSEE DEPARTMENT OF               )  Magistrate Judge Poplin
CHILDREN'S SERVICES, *et al.*,        )
                                      )
  *Defendants*.              )

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Plaintiffs Scott and Sharon Evers' Motion for Temporary Restraining Order [Doc. 5], their Motion for Expedited Discovery [Doc. 6], their Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 13], their Motion for Protective Order [Doc. 14], their Motion for Sanctions [Doc. 15], and their Emergency Motion to Quash [Doc. 16]. For the following reasons, the Motion for Temporary Restraining Order [Doc. 5], the Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 13], the Motion for Protective Order [Doc. 14], the Motion for Sanctions [Doc. 15], and the Emergency Motion to Quash [Doc. 16] are **DENIED**, and the Motion for Expedited Discovery [Doc. 6] is **DENIED WITHOUT PREJUDICE**.

## I.  BACKGROUND

Plaintiffs allege that in late July 2022, Mrs. Evers's daughter, B.A., stated Mr. Evers had sexually abused her.[1] [Doc. 4-1 at 43; Doc. 4-7 at 1]. Mrs. Evers responded to this information by calling a family friend, April Heatherly, who recommended B.A. meet with a mental health professional. [Doc. 4-1 at 47; Doc. 4-3 at 1]. Mrs. Evers scheduled an appointment for B.A. with

---

[1] B.A. is Mr. Evers's stepdaughter. [*See* Doc. 4-1 at 24–25, 33].

the family's "THL coordinator," Breanna Cavazza, for the next day, and Mr. Evers voluntarily left the Plaintiffs' home which he solely owned. [*See* Doc. 4-1 at 15–16, 47; Doc. 4-7 at 1]. Following B.A.'s appointment, Cavazza reported B.A.'s abuse allegations to Defendant Tennessee Department of Children's Services ("DCS") as required by law. [Doc. 3 at ¶ 22; Doc. 4-1 at 47; Doc. 4-7 at 1].

On August 1, 2022, Defendant Jeremy Crenshaw, a DCS investigator, went to the Plaintiffs' home. [Doc. 3 at ¶ 23, Doc. 4-1 at 1; Doc. 4-7 at 1]. He knocked on the Plaintiffs' door and when Mrs. Evers answered, he stated, "I believe you are expecting me." [Doc. 4-1 at 1]. Mrs. Evers responded by informing Crenshaw he would need to wait a minute and closed the door. [*Id.*]. When Mrs. Evers reopened the door a few minutes later, Crenshaw handed her his business card. [*Id.* at 2]. Crenshaw then began entering the Plaintiffs' home but stopped himself. [*Id.*]. He then requested permission to enter. [*Id.*]. Mrs. Evers did not verbally respond to Crenshaw's request but instead backed away from the open door. [*Id.*]. Plaintiffs allege that Crenshaw took this as permission to enter their home.[2] [*Id.*]. Once inside Plaintiffs' home, Crenshaw interviewed B.A. and Mrs. Evers's other children, J.A. and T.A., outside her presence.[3] [*See id.* at 4-1 at 4–5]. It is unclear whether Mr. Evers's son, J.E., was also interviewed at this time.[4] Crenshaw also inspected Plaintiffs' refrigerator and the children's rooms. [*Id.* at 5; Doc. 21]. He then obtained the Plaintiffs' and the children's Social Security numbers before providing Mrs. Evers with a copy of DCS's client rights handbook. [Doc. 4-1 at 5]. Crenshaw then informed Mrs. Evers he was scheduling B.A. for a forensic interview at Defendant New Hope Children's Advocacy Center ("NHCAC").

---

[2] Plaintiffs allege that Mr. Evers was still voluntarily staying out of the house at this time. [*See* Doc. 4-1 at 3–4, 6].

[3] J.A. and T.A., like B.A., are Mr. Evers's stepchildren. [*See* Doc. 4-1 at 24–25, 27, 33].

[4] J.E. is Mrs. Evers's stepson. [*See* Doc. 4-1 at 8].

[*Id.* at 6].

B.A. was interviewed at NHCAC on August 4, 2022. [*Id.* at 6–7; Doc. 4-7 at 1]. Mrs. Evers was not allowed to either participate in or observe the interview.[5] [Doc. 4-1 at 6–7]. After B.A.'s forensic interview was complete, Crenshaw and a male sheriff's deputy approached Mrs. Evers. [*Id.* at 7]. Crenshaw informed Mrs. Evers he believed her children were in danger and demanded that all children living at the Plaintiffs' home—including J.E.—be brought to NHCAC immediately.[6] [*Id.*]. Although Mrs. Evers questioned whether the other children were in danger, she agreed to bring them to NHCAC after being told law enforcement would be dispatched if she failed to comply. [*Id.* at 7–8]. Mrs. Evers then attempted to leave NHCAC with B.A., but Crenshaw stopped her and asked that B.A. remain at NHCAC until Mrs. Evers returned. [*Id.* at 8]. Mrs. Evers allegedly agreed to Crenshaw's request under duress.[7] [*Id.*].

Mrs. Evers left NHCAC and returned later with J.A., T.A., J.E., and Heatherly whom Mrs. Evers had asked to serve as her advocate. [*Id.* at 9–10; Doc. 4-3 at 2]. Once Mrs. Evers returned, either DCS or NHCAC personnel requested permission to forensically interview J.A., T.A., and J.E. [Doc. 4-1 at 10]. Mrs. Evers allegedly consented under duress to J.A. and T.A. being interviewed while J.E. was interviewed without either of his parent's permission. [*Id.*]. Around this time, Mrs. Evers was asked if she would consider giving up custody of her children. [*Id.* at 11–12]. When she refused, Crenshaw requested she sign an Immediate Protection Agreement

---

[5] Mrs. Evers asserts she was later able to review a recording of B.A.'s forensic interview and that she does not believe Mr. Evers abused B.A. based on B.A.'s statements and behavior. [Doc. 4-1 at 47–51].

[6] Mrs. Evers represents she informed Crenshaw she had no parental rights relating to J.E. but that Crenshaw required her to bring J.E. to NHCAC, nevertheless. [Doc. 4-1 at 7–8]. Mrs. Evers claims this amounted to Crenshaw telling her to kidnap her stepson. [*Id.*].

[7] Plaintiffs do not know what occurred at NHCAC during the time Mrs. Evers was retrieving the other children as NHCAC's policy is to delete footage from its lobby and front entrance cameras after 15 days. [Doc. 4-1 at 8–9; Doc. 4-5; *see also* Doc. 3 at ¶ 29].

("IPA") that would preclude Mr. Evers from having contact with B.A., J.A., T.A., and J.E. [Doc. 4-1 at 12; Doc. 21-4]. Mrs. Evers allegedly signed the IPA under duress. [Doc. 4-1 at 12; Doc. 3 at ¶ 26]. Crenshaw then allegedly forged Mr. Evers's signature on the IPA. [Doc. 3 at ¶ 25; Doc. 4-1 at 12–13; Doc. 4-2; Doc. 4-3 at 3–4]. After the IPA was signed and the other children were taken home, Mrs. Evers and Heatherly took B.A. for a physical exam which did not reveal any obvious signs of physical trauma. [*See* Doc. 4-1 at 21, 49, 52; Doc. 4-3 at 4].

In the days that followed, DCS initiated proceedings in the Blount County Juvenile Court to keep Mr. Evers separated from B.A., J.A., and T.A.[8] [*See* Doc. 3 at ¶ 31; Doc. 4-1 at 15; Doc. 4-7 at 1; Doc. 21-1]. A preliminary hearing in the Blount County case was held before Defendant Magistrate Jason Beddingfield on September 6, 2022.[9] [*See* Doc. 4-7 at 2]. Plaintiffs claim Magistrate Beddingfield engaged in a variety of misconduct during this hearing and ultimately entered an order of protection barring Mr. Evers from returning to the family's home or having contact with the children. [*See* Doc. 3 at ¶ 32; Doc. 4-1 at 15–16; Doc. 4-6 at 2]. To prevent Mr. Evers from being deprived of his real property, Mrs. Evers elected to move with her children to her parents' home in Kentucky. [Doc. 4-1 at 15–16].

Thereafter the Blount County case continued to progress. [*See* Doc. 4-7 at 2–3]. On April 21, 2023, (i.e., the Friday before a hearing with Magistrate Beddingfield), Defendant Kristen Leonard, a DCS caseworker, showed up at the Evers' door to investigate a report that Mrs. Evers and the children had moved back in. [Doc. 3 at ¶ 37; Doc. 4-1 at 17–18; Doc. 4-7 at 2]. Both Mrs.

---

[8] It is unclear from the record whether there was a separate case concerning J.E.

[9] During the course of these proceedings, the children were assigned guardians ad litem ("GALs"): Defendants Gina Jenkins and Erin Schaad. [*See* Doc. 3 at ¶¶ 13–14, 38; Doc. 4-1 at 18–21; Doc. 4-7 at 2–3]. Plaintiffs take issue with the GALs' performance. [*See* Doc. 3 at ¶¶ 13–14, 38, 56; Doc. 4-1 at 18–21]. Given, however, that the GALs' alleged misconduct has no bearing on the motions currently before the Court, the GALs are not discussed further.

4

and Mr. Evers were present at the home at this time.[10] [Doc. 4-1 at 17]. Mrs. Evers initially stayed in the home to call her attorney while Mr. Evers told Leonard she was trespassing. [*Id.*]. Eventually, Mrs. Evers came to the door and stated that her children were not with her and that she would not discuss the matter further until first speaking with her attorney. [*Id.*]. This allegedly angered Leonard who reminded Plaintiffs they had a court date the following Monday before leaving. [*Id.* at 17–18].

The following week, Plaintiffs participated in a two-day hearing before Magistrate Beddingfield. [*See* Doc. 4-1 at 16; Doc. 4-7 at 2–3]. At the conclusion of this hearing, Magistrate Beddingfield decided to keep the previously entered order of protection in effect. [Doc. 4-1 at 16; Doc. 4-7 at 3]. Plaintiffs appealed Magistrate Beddingfield's decision to the Blount County Circuit Court. [*See* Doc. 3 at ¶ 42; Doc. 4-7 at 3]. In April 2024, Blount County Circuit Judge Tammy Harrington issued the court's written decision, affirming the order of protection against Mr. Evers but relieving Mrs. Evers of all court-ordered obligations. [Doc. 3 at ¶ 42; Doc. 4-7 at 3].

This lawsuit followed more than a year later on May 7, 2025. [Docs. 3]. Alongside their Complaint, Plaintiffs filed applications to proceed *in forma pauperis* [Docs. 1–2] which remain pending and two motions: a Motion for Temporary Restraining Order [Doc. 5] and a Motion for Expedited Discovery [Doc. 6]. The case then went quiet until August 13, 2025, when the Court received a letter from Mrs. Evers accompanied by several exhibits. [Doc. 11; Docs. 11-1–11-2]. In this letter, Mrs. Evers claims that on July 7, 2025, DCS caseworkers Anna Pendleton and Jessica Lively, along with Blount County Sheriff's deputies Williams and McMurry, went to Mr. Evers's home to question Mr. Evers about a new report they received stating Mrs. Evers and her children

---

[10] Mrs. Evers claims she was at the family's home to gather some of her and the children's belongings. [Doc. 4-1 at 17].

had moved back in. [Doc. 11 at 5]. It is unclear from the letter whether this questioning happened inside Mr. Evers's house or merely on his property. [*See id.*].

On July 9, 2025, Mrs. Evers—who is currently living with her father in Kentucky—was visited by Kentucky Cabinet of Health and Family Services ("CHFS") caseworkers Megan B. Haynes and Tammy E. Nelson. [*Id.* at 6]. Mrs. Evers alleges Haynes and Nelson trespassed on her father's property to perform a courtesy call on behalf of DCS. [*Id.*]. Mrs. Evers allegedly informed Haynes and Nelson that she was a witness in this case and asked them to leave. [*Id.*]. Later that same day, Madison County, Kentucky, Sheriff's deputies Hollenbeck and Foster visited Mrs. Evers's father's house to inquire whether Mr. Evers was there. [*Id.*]. Mrs. Evers allegedly responded by giving the deputies this case's case number. [*Id.*]. It does not appear from Mrs. Evers's letter that either the deputies or the CHFS caseworkers entered her father's home. [*See id.*].

On July 25, 2025, Haynes and fellow CHFS caseworker Skylar Haynes allegedly visited Mrs. Evers's father's property again, alongside Madison County Sheriff's deputies Pfisterer and Tipton, to search for Mr. Evers. [*Id.*]. Mrs. Evers's father asked them to leave, but they refused until they were able to speak with Mrs. Evers. [*Id.*]. On August 1, 2025, Deputy Tipton visited Mrs. Evers again, this time to serve her with papers regarding a newly filed Kentucky family court case concerning her fitness as a parent and alleged failure to protect her children by allowing them to have contact with Mr. Evers. [*Id.* at 6–7; *see also* Doc. 13 3–5; Doc. 16]. Finally, Haynes allegedly left business cards in multiple of Mrs. Evers's father's neighbors' mailboxes with requests for the neighbors to contact her. [Doc. 11 at 8].

In the days that followed, Plaintiffs filed a Motion for Status Conference [Doc. 12], an Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 13], a

Motion for Protective Order [Doc. 14], a Motion for Sanctions [Doc. 15], an Emergency Motion to Quash [Doc. 16], and a Motion for Leave to File Electronically [Doc. 20]. Plaintiffs' Motion for Status Conference has already been denied, [Doc. 19], and their Motion for Leave to File Electronically has been granted. [Doc. 22]. Through this Memorandum Opinion and Order, the Court will address the remaining Motions.

## II. MOTIONS FOR TEMPORARY RESTRAINING ORDERS AND PRELIMINARY INJUNCTIONS

Federal Rule of Civil Procedure 65 provides that a preliminary injunction may issue "only on notice to the adverse party". FED. R. CIV. P. 65(a)(1). As for a temporary restraining order, it may be issued without notice, but only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1). Pro se litigants are obligated to comply with Rule 65(b)(1)'s certification requirement, and failure to do so is grounds for the denial of their motion. *See Chapman v. Slatery*, No. 1:20-cv-01139-STA-jay, 2021 U.S. Dist. LEXIS 99669, at *3 (W.D. Tenn. May 26, 2021) (denying a pro se motion for temporary restraining order where the movant "failed to certify any efforts made to give notice to respondents or reasons why notice should not be required"); *Jones v. Centier Bank,* No. 24-12571, 2024 U.S. Dist. LEXIS 183833, at *4–5 (E.D. Mich. Oct. 8, 2024) (same); *Banks v. Mich. State Univ.*, No. 1:23-cv-778, 2023 U.S. Dist. LEXIS 151252, at *2–3 (W.D. Mich. July 26, 2023) (same), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 150744 (W.D. Mich. Aug. 28, 2023).

In addition to Rule 65's requirements, courts consider four factors when determining

whether to issue a temporary restraining order or preliminary injunction. These factors are "(1) whether the movants have a strong likelihood of success on the merits, (2) whether the movants would suffer irreparable injury absent a TRO or preliminary injunction, (3) whether granting the TRO or preliminary injunction would cause substantial harm to others, and (4) whether the public interest would be served by granting the TRO or preliminary injunction." *ACLU of Mich. v. Does*, 755 F. Supp. 3d 1003, 1007 (E.D. Mich. 2024).

Applying the foregoing law to Plaintiffs' Motion for Temporary Restraining Order [Doc. 5] and their Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 13], both must be denied.

### A. *Motion for Temporary Restraining Order [Doc. 5]*

Nothing in the record indicates Plaintiffs have provided Defendants with notice of their Motion for Temporary Restraining Order. Accordingly, to the extent Plaintiffs seek a preliminary injunction through this Motion, they are not entitled to one. FED. R. CIV. P. 65(a)(1). Similarly, Plaintiffs have not certified in writing the efforts they made to provide Defendants with notice of this Motion, nor have they explained why notice should not be required. Thus, Plaintiffs are also not entitled to a TRO. FED. R. CIV. P. 65(b)(1); *Chapman*, 2021 U.S. Dist. LEXIS 99669, at *3; *Jones*, 2024 U.S. Dist. LEXIS 183833, at *4–5; *Banks*, 2023 U.S. Dist. LEXIS 151252, at *2–3.

Looking beyond these technical deficiencies, Plaintiffs have also failed to demonstrate an entitlement to their requested relief, namely injunctions preventing Defendants from (1) "[e]nforcing the forged IPA"; (2) "[c]onducting warrantless entries"; and (3) "[m]aintaining Scott Evers' separation from his property and family." [Doc. 5 at 2]. Regarding Plaintiffs' request that the Court enjoin Defendants from enforcing the IPA, this issue is moot. DCS policy dictates that IPAs dissolve when a court order supersedes them. TENN. DEP'T CHILDREN SERVS., POLICY 14.13:

NON-CUSTODIAL        IMMEDIATE        PROTECTION        AGREEMENTS        (2023)
(https://www.tn.gov/dcs/program-areas/qi/policies-reports-manuals/policies.html).[11] In this case,
Magistrate Beddingfield's order of protection, which was later affirmed by Judge Harrington,
superseded the allegedly forged IPA. *See id.*; [Doc. 3 at ¶ 42; Doc. 4-7 at 3]. Consequently, the
IPA has been dissolved, and Plaintiffs' request to enjoin its enforcement has been rendered moot.[12]

Plaintiffs' request that the Court enjoin Defendants from maintaining Mr. Evers's
separation from his property is similarly moot. Plaintiffs assert Mrs. Evers moved out of the
family's home in the months following the execution of the IPA so that Mr. Evers could return to
his property. [Doc. 4-1 at 15–16; Doc. 11 at 4]. As Mr. Evers is again residing at his property,
there is no separation the Court needs to enjoin, and this issue is moot.

Regarding Mr. Evers's continued separation from his family, the *Rooker-Feldman* doctrine
prevents the Court from providing Plaintiffs their requested relief. "The *Rooker-Feldman* doctrine
precludes federal district courts from hearing 'cases brought by state-court losers complaining of
injuries caused by state-court judgments rendered before the district court proceedings commenced
and inviting district court review and rejection of those judgments.'" *Brent v. Wayne Cnty. Dep't
of Human Servs.*, 901 F.3d 656, 674 (6th Cir. 2018) (quoting *Exxon Mobil Corp. v. Saudi Basic
Indus. Corp.*, 544 U.S. 280, 284 (2005)). Here, Mr. Evers cannot see his family (and specifically
B.A., J.A., and T.A.) because of the final judgment entered in the Blount County case, a judgment
that was rendered before these proceedings commenced. [*See* Doc. 3 at ¶ 42; Doc. 4-7 at 3; Doc.

---

[11] The Court may take judicial notice of this Policy. *Mitchell v. TVA*, No. 3:14-CV-360-TAV-HBG, 2015 U.S. Dist.
LEXIS 56527, at *9 n.2 (E.D. Tenn. Apr. 30, 2015) ("The Court may take judicial notice of 'public records and
government documents available from reliable sources on the Internet.'" (quoting *Cloe v. City of Indianapolis*, 712
F.3d 1171, 1177 n.3 (7th Cir. 2013)); *see also Bray v. Warden, Leb. Corr. Inst.*, No. 3:12-cv-303, 2012 U.S. Dist.
LEXIS 147860, at *3 (S.D. Ohio Oct. 12, 2012) ("Public records and government documents, including those available
from reliable sources on the Internet, are subject to judicial notice.").

[12] This does not mean Mr. Evers may now have contact with the children. Contact is still prohibited by the judgment
entered in the Blount County case. [*See* Doc. 3 at ¶ 42; Doc. 4-7 at 3; Doc. 21-1].

21-1]. Considering this alongside the fact that Plaintiffs are attempting to call this judgment into question, *Rooker-Feldman* clearly applies. *See Brent*, 901 F.3d at 674. Therefore, Plaintiffs are unlikely to succeed on the merits of their claim(s) concerning Mr. Evers's family separation injury, and their request for injunctive relief must be denied. *See Boston v. Nationstar Mortg.*, No. 2:18-cv-283, 2018 U.S. Dist. LEXIS 56352, at *2 (S.D. Ohio Apr. 3, 2018) (denying a motion for a temporary restraining order where the movant was seeking review of a state court judgment); *Leaphart v. Detroit Hous. Comm'n*, No. 12-13960, 2012 U.S. Dist. LEXIS 197246, at *3 (E.D. Mich. Oct. 18, 2012) (same); *Tyson v. RBS Citizens, NA*, No. 11-10852, 2011 U.S. Dist. LEXIS 21284, at *2 (E.D. Mich. Mar. 3, 2011) (same).

Turning to Plaintiffs' request that Defendants be enjoined from conducting warrantless entries, Plaintiffs lack standing to pursue this claim. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (noting that standing is evaluated on a claim-by-claim basis). To establish standing to pursue injunctive relief, a plaintiff "must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct[.]" *Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (internal quotation marks omitted). The injury or threat thereof must be "real and immediate," not "conjectural" or "hypothetical." *Id.* Furthermore, past exposure to illegal conduct alone is insufficient to confer standing to pursue injunctive relief absent "any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). Here, Plaintiffs allege DCS personnel and Blount County Sheriff's deputies entered and searched their home without permission or a warrant. [Doc. 3 at ¶ 23; Doc. 4-1 at 2; Doc. 11 at 5–6; Doc. 14 at 1]. They also allege that various individuals encroached upon the curtilage of Mr. Evers's home and the home of Mrs. Evers's father without warrants despite posted No Trespassing signs. [*See* Doc. 3 at ¶ 37; Doc. 4-1 at 17–18; Doc. 4-7 at 2; Doc. 11 at 5–7]. As these allegations concern only past

allegedly illegal conduct, they are insufficient to establish Plaintiffs' standing to pursue prospective injunctive relief. *See O'Shea*, 414 U.S. at 496; *United States v. Calandra*, 414 U.S. 338, 354 (1974) (noting that a Fourth Amendment violation "is fully accomplished by the original search without probable cause"). Furthermore, as to Plaintiffs' claims that several Defendants entered their curtilage without permission, this conduct did not violate the Fourth Amendment. *United States v. Hopper*, 58 F. App'x 619, 623–24 (6th Cir. 2003) (noting that the Fourth Amendment permits government officials to "encroach upon the curtilage of a home" without a warrant "for the purpose of asking questions of the occupants," even when confronted with No Trespassing signs). Consequently, even if Plaintiffs had standing to pursue their curtilage-related injunctive relief claims, they would have no likelihood of succeeding on the merits. *See Mich. State v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("[A] preliminary injunction [or TRO] issued where there is simply no likelihood of success on the merits must be reversed.").

Accordingly, Plaintiffs' Motion for Temporary Restraining Order [Doc. 5] must be **DENIED**.

### B. *Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 13]*

As was the case with Plaintiffs' Motion for Temporary Restraining Order [Doc. 5], nothing in the record indicates Plaintiffs have provided Defendants with notice of their Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 13]. Accordingly, Plaintiffs are not entitled to the preliminary injunction they seek through this Motion. FED. R. CIV. P. 65(a)(1). Similarly, Plaintiffs have again failed to certify in writing the efforts they made to provide Defendants with notice of this Motion, nor have they explained why notice should not be required. Therefore, Plaintiffs are also not entitled to a TRO. FED. R. CIV. P. 65(b)(1); *Chapman*, 2021 U.S. Dist. LEXIS 99669, at *3; *Jones*, 2024 U.S. Dist. LEXIS 183833, at *4–5; *Banks*, 2023 U.S. Dist.

LEXIS 151252, at *2–3. Beyond this, Plaintiffs have also failed to demonstrate they are entitled to any of their requested relief.

### 1. "No Contact Outside Lawful Process"

Plaintiffs request the Court "[e]njoin[] Defendants from contacting Plaintiffs except through lawful court process, written correspondence, or counsel of record." [Doc. 13 at 7]. Plaintiffs, however, have failed to direct the Court to any authority that authorizes it to limit the methods by which Defendants communicate with Plaintiffs. The Court has similarly been unable to find any such authority through its own extensive research. Accordingly, this request must be denied.

The Court only possesses that power which is "authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It has "no general power to act and cannot issue binding orders without deriving authority from some statute or constitutional provision." *Groulx v. Master*, No. 1:24-cv-11997, 2024 U.S. Dist. LEXIS 207092, at *7 (E.D. Mich. Oct. 29, 2024), *report and recommendation adopted by* 2024 U.S. Dist. LEXIS 210193 (E.D. Mich. Nov. 19, 2024). Because the Court is unaware of any authority empowering it to limit the methods by which Defendants communicate with Plaintiffs, Plaintiffs' request for an injunction concerning the same must be denied. *See id.* (recommending denial of a motion where the movant failed to identify the authority empowering the court to grant his requested relief and the court was unaware of any such authority). After all, Plaintiffs are unlikely to succeed on the merits of a claim for injunctive relief when the Court lacks the authority to grant the requested injunction. *See id.*; *Mich. State*, 103 F.3d at 1249.

### 2. "No Trespass"

Plaintiffs request the Court "[p]rohibit[] Defendants from entering Plaintiffs' residences,

family properties, or curtilage absent a lawful warrant." [Doc. 13 at 7]. But as noted *supra* p. 10–11, Plaintiffs lack standing to pursue such injunctive relief. Furthermore, as to Plaintiffs' claims regarding their curtilage, they are unlikely to succeed on the merits of these claims because government officials may encroach upon the curtilage of a home to question its occupants. *Hopper*, 58 F. App'x at 623–24.

### 3. "Surveillance and Third-Party Interference"

Plaintiffs request the Court "[e]njoin[] Defendants from surveilling Plaintiffs, relying on unverified 'sightings,' or soliciting information from neighbors or third parties outside lawful channels." [Doc. 13 at 8]. Plaintiffs, however, have failed to direct the Court to any authority it possesses to enjoin Defendants from engaging in surveillance, relying on "unverified sightings," or soliciting information from third parties. The Court has similarly been unable to find any such authority on its own. Accordingly, this request must be denied. *See Groulx*, 2024 U.S. Dist. LEXIS 207092, at *7; *Mich. State*, 103 F.3d at 1249.

### 4. "Health and Safety Protections"

Plaintiffs request the Court "[d]irect[] that all communications to Scott Evers be in writing or through lawful service only, in recognition of his severe cardiac condition." [Doc. 13 at 8]. Again, Plaintiffs have failed to direct the Court to any authority authorizing it to limit the methods by which they receive communications, and the Court has similarly been unable to find any such authority on its own. *See supra* p. 12. Accordingly, Plaintiffs' request must be denied. *See Groulx*, 2024 U.S. Dist. LEXIS 207092, at *7; *Mich. State*, 103 F.3d at 1249.

### 5. "Non-Interference with Family Placement"

Plaintiffs request the Court "[e]njoin[] Defendants from interfering with the children's current placement with family during this federal case, absent lawful order." [Doc. 13 at 8]. In

making this request, Plaintiffs essentially ask the Court to order Defendants to obey the law. But such a broad obey-the-law injunction would be improper. *See Bazzy Invs. v. City of Dearborn*, No. 16-10879, 2018 U.S. Dist. LEXIS 129636, at *22 (E.D. Mich. Aug. 2, 2018) ("Where a court's injunction is a generalized order to abide by a broad legal command[,] the obey-the-law injunction fails."); *Perez v. Ohio Bell Tel. Co.*, 655 F. App'x 404, 410 (6th Cir. 2016) ("The Supreme Court has warned against sweeping injunction to obey the law and has cautioned courts about their duty to avoid such orders." (cleaned up)). Accordingly, this request must be denied.

### 6. "No Contact with Mintor Children Outside Lawful Process"

Plaintiffs request the Court "[p]rohibit[] Defendants from directly contacting or questioning Sharon Evers' children except through lawful channels." [Doc. 13 at 8]. This request, like the one that preceded it, is nothing more than a request for the Court to order Defendants to follow the law. Consequently, this request must also be denied. *See Bazzy Invs.*, 2018 U.S. Dist. LEXIS 129636, at *22; *Perez*, 655 F. App'x at 410.

### 7. "Minimization of Trauma"

Plaintiffs request "that any lawful service of process involving Sharon or her children be conducted without uniformed officers unless strictly necessary." [Doc. 13 at 8]. This is another example of Plaintiffs requesting relief but providing no basis for the Court's authority to award it. And as with Plaintiffs' prior requests, the Court has been unable to locate any such authority on its own. Accordingly, this request must be denied. *See Groulx*, 2024 U.S. Dist. LEXIS 207092, at *7; *Mich. State*, 103 F.3d at 1249.

### 8. "Federal Litigation Protection"

Plaintiffs request the Court "[e]njoin[] Defendants from initiating duplicative or retaliatory state proceedings during the pendency of this action, absent lawful cause." [Doc. 13 at 8]. To the

extent Plaintiffs seek to prevent Defendants from unlawfully initiating new proceedings generally through this request, it is another request for a broad obey-the-law injunction. Consequently, it must be denied. *See Bazzy Invs.*, 2018 U.S. Dist. LEXIS 129636, at *22; *Perez*, 655 F. App'x at 410.

To the extent Plaintiffs seek to enjoin the recently filed Kentucky case from proceeding through this request, the *Younger* abstention doctrine precludes the Court from providing Plaintiffs their requested relief. The *Younger* abstention doctrine "is based on the proposition that in the absence of extraordinary circumstances principles of federalism, comity and equity require that federal courts abstain from unduly interfering with state criminal court proceedings" and "certain civil actions." *Johnson v. Zurz*, 596 F. Supp. 39, 44 (N.D. Ohio 1984). "The purpose of [this] doctrine is to prevent undue interference in legitimate state functions by the federal court." *Id.* To that end, *Younger* requires the Court to abstain "when the state proceeding (1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims." *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998). The Kentucky case satisfies each of these prongs.

Starting with *Younger*'s first prong, the Kentucky case is "currently pending." *Id.* In assessing whether a case is currently pending, the Sixth Circuit often applies the "day-of-filing" rule, which requires the state proceeding to "be pending on the day the plaintiff sues in federal court." *Nimer v. Litchfield Bd. of Trs.*, 707 F.3d 699, 701 (6th Cir. 2013). The day-of-filing rule, however, is not absolute. If state court proceedings are commenced *after* a federal complaint is filed "but before any proceedings of substance on the merits have taken place in the federal court," *Younger* still applies with full force. *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). Here, it appears the Kentucky case was filed after the commencement of these proceedings given that an affidavit

used to initiate the Kentucky case purportedly referenced these proceedings. [*See* Doc. 11 at 7]. Therefore, the Kentucky case does not satisfy the day-of-filing rule. *See Nimer*, 707 F.3d at 701. That said, this is of little consequence as no "proceedings of substance on the merits have taken place" in this case. *See Hicks*, 422 U.S. at 349. No Defendant has filed an answer or even entered an appearance. Furthermore, the Complaint has yet to even be screened as required by 28 U.S.C. § 1915. Accordingly, *Younger*'s first prong is satisfied. *See Hicks*, 422 U.S. at 349.

Turning to *Younger*'s second prong, "traditional domestic relations issues" like those concerning child custody and abuse, "qualify as important state issues[.]" *Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995); *see also Clark v. Mich. 7th Judicial Circuit Court*, No. 21-10690, 2021 LX 91817, at *5 (E.D. Mich. May 3, 2021) ("[T]he Sixth Circuit has repeatedly applied *Younger* abstention to constitutional challenges of state court proceedings involving disputes over child custody and abuse."). Accordingly, the Kentucky case satisfies *Younger*'s second prong because it concerns Mrs. Evers's fitness as a parent and whether she has failed to protect her children from abuse. [*See* Doc. 11 at 6–7; Doc. 13 at 3–5].

This leaves only *Younger*'s final prong. The Court "must presume that the state courts are able to protect the interests of the federal plaintiff." *Meyers v. Franklin Cnty. Ct. of Common Pleas*, 23 F. App'x 201, 205 (6th Cir. 2001) (quoting *Kelm*, 44 F.3d at 420). State court judges must follow the United States Constitution, and Plaintiffs offer no evidence, let alone evidence sufficient to warrant either a temporary restraining order or preliminary injunction, to suggest the judge in the Kentucky case will disregard that obligation and prevent Plaintiffs from raising their constitutional claims. *Id.* (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). The Court has no reason to believe the Kentucky judicial system cannot address Plaintiffs' constitutional claims. For these reasons, the third prong is satisfied, and *Younger* requires the Court to abstain,

unless an exception applies.

*Younger* establishes exceptions to its applicability, including "bad faith" and "harassment." *Squire v. Coughlan*, 469 F.3d 551, 557 (6th Cir. 2006) (quoting *Fieger v. Thomas*, 74 F.3d 740, 750 (6th Cir. 1996)). If an exception applies, the federal court can decline to abstain. *Id.* Plaintiffs invoke the bad faith/harassment exception by arguing the Kentucky case "is part of a broader escalating campaign of harassment, retaliation, and intimidation by Defendants designed to undermine this Court's jurisdiction and chill Plaintiffs' exercise of constitutional rights." [Doc. 16 at 2].

The Sixth Circuit and Supreme Court apply the bad faith/harassment exception narrowly. Specifically, "the Supreme Court has applied the bad faith/harassment exception 'to only one specific set of facts: where state officials initiate repeated prosecutions to harass an individual or deter his conduct, and where the officials have no intention of following through on these prosecutions." *Lloyd v. Doherty*, No. 18-3552, 2018 U.S. App. LEXIS 33324, at *9 (6th Cir. Nov. 27, 2018) (quoting *Ken-N.K., Inc. v. Vernon Twp.*, 18 F. App'x 319, 324–25 n.2 (6th Cir. 2001)). Here, Plaintiffs' allegations fail to establish the bad faith/harassment exception applies. Even assuming the Kentucky case can be characterized as a "repeated prosecution"—which is doubtful given it was initiated by Kentucky's CHFS whereas the Blount County case was initiated by Tennessee's DCS—nothing in the record indicates CHFS does not intend to follow through on the case. Accordingly, the bad faith/harassment exception does not apply, and *Younger* therefore precludes the Court from enjoining the Kentucky case. *See Carroll*, 139 F.3d at 1074. This request for relief is therefore denied.

9. "Preservation of Evidence"

Plaintiffs request the Court "[o]rder[] Defendants to preserve all records, including emails,

texts, case notes, surveillance, reports, and recordings since May 7, 2025." [Doc. 13 at 8]. Plaintiffs, however, have failed to demonstrate the Court's intervention is necessary to obtain this relief. "[A] party to civil litigation has a duty to preserve relevant information…when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)). Accordingly, Defendants are already under a duty to preserve relevant records to the extent they have notice of this case or should have known that the records might be relevant to future litigation. *Id.* If Plaintiffs are concerned that Defendants might not be preserving post-May 7, 2025, materials (of which there is no evidence or allegation), they can remedy their concerns by ensuring Defendants have notice of their claims. Therefore, this request is denied.

### 10. "Protective Notice to Schools and Caregivers"

Plaintiffs request the Court "[a]uthoriz[e] Sharon to provide this Court's orders to schools, medical providers, and caregivers to prevent unlawful questioning." [Doc. 13 at 8]. It is unnecessary for the Court to provide this relief because nothing currently precludes Mrs. Evers from providing this Court's orders to schools, medical providers, caregivers, or anyone else for that matter. None of the Orders in this case have been filed under seal, and the Court is unaware of any other statute or rule prohibiting their disclosure. Accordingly, this request is denied as moot.

### 11. "Witness Protection"

Plaintiffs request the Court "[r]ecogniz[e] Sharon as a federal witness and enjoin[] harassment, intimidation, or tampering." [Doc. 13 at 8]. As this request is just another broad obey-the-law injunction, it must be denied. *See Bazzy Invs.*, 2018 U.S. Dist. LEXIS 129636, at *22; *Perez*, 655 F. App'x at 410. Additionally, a person's status as a witness does not depend on the

Court's recognition of them as such but rather on the role they play in litigation. Accordingly, there is no need for the Court to formally "recognize" Mrs. Evers as a witness.

### 12. "Narrow Tailoring"

Plaintiffs request the Court "[c]larify[] that [their requested] relief is narrowly tailored to prevent retaliation while preserving lawful duties." [Doc. 13 at 8]. But there is no need for the Court to clarify that Plaintiffs' requested relief is narrowly tailored since Plaintiffs have failed to demonstrate they are entitled to any of their requested relief. Accordingly, this request is denied.

### 13. "Review and Grant of Prior TRO Motion"

Plaintiffs request "the Court review their previously filed Motion for Temporary Restraining Order (filed May 7, 2025) and grant the additional relief requested therein." [Doc. 13 at 9]. Plaintiffs, however, are not entitled to the relief requested in their previously filed Motion for Temporary Restraining Order for the reasons discussed *supra* p. 8–11. Accordingly, this request is denied.

### 14. "Emergency Hearing"

Plaintiffs request the Court "[s]chedul[e] an emergency hearing within 48 hours to determine further relief." [Doc. 13 at 9]. Considering that Plaintiffs have failed to demonstrate an entitlement to any of their requested relief plus the fact the Complaint has yet to be screened, the Court will deny Plaintiffs' request for a hearing.

Accordingly, Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 13] is **DENIED**.

### III. MOTION FOR PROTECTIVE ORDER [Doc. 14]

Although styled as a "Motion for Protective Order," this is actually another motion for either a temporary restraining order or preliminary injunction. [*See* Doc. 14]. Through this Motion,

19

Plaintiffs seek to enforce No Trespass notices and bar Defendants from their properties. [*Id.* at 2]. They also request a hearing. [*Id.*]. Plaintiffs, however, are not entitled to any of their requested relief.

This Motion, like Plaintiffs' Motion for Temporary Restraining Order and their Emergency Motion for Temporary Restraining Order and Preliminary Injunction, fails to comply with the requirements of either Rule 65(a)(1) or (b)(1). Therefore, Plaintiffs are not entitled to either a TRO or a preliminary injunction. *See* FED. R. CIV. P. 65; *Chapman*, 2021 U.S. Dist. LEXIS 99669, at *3; *Jones*, 2024 U.S. Dist. LEXIS 183833, at *4–5; *Banks*, 2023 U.S. Dist. LEXIS 151252, at *2–3. Looking past this technical failure, Plaintiffs also lack standing to pursue injunctive relief barring Defendants from making warrantless entries onto their property. *See supra* p. 10–11. Therefore, Plaintiffs are not entitled to any of their requested injunctive relief. Because of this, a hearing would be unnecessary.

Accordingly, Plaintiffs' Motion for Protective Order [Doc. 14] is **DENIED**.

## IV.     MOTION FOR SANCTIONS [Doc. 15]

Plaintiffs request the Court sanction Defendants "for harassment and bad faith filings." pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. [Doc. 15]. Plaintiffs further request the Court order Defendants "to cease all contact and retract the August 1, 2025 paperwork" that has led to the Kentucky case. [*Id.*].

As to Plaintiffs' latter request, it—like Plaintiffs' Motion for Protective Order—is really another motion for injunctive relief. And like Plaintiffs' other motions for injunctive relief, this one fails to comply with either Rule 65(a)(1) or (b)(1). Therefore, Plaintiffs' requests for injunctive relief must be denied. *See* FED. R. CIV. P. 65; *Chapman*, 2021 U.S. Dist. LEXIS 99669, at *3; *Jones*, 2024 U.S. Dist. LEXIS 183833, at *4–5; *Banks*, 2023 U.S. Dist. LEXIS 151252, at *2–3.

Furthermore, as to Plaintiffs' request that the Court order the retraction of the "August 1, 2025, paperwork," the Court is unaware of any authority it possesses to order a defendant to dismiss a separate lawsuit in a different state, and Plaintiffs have not directed the Court to any such authority. Consequently, the Court cannot order Defendants to retract the "August 1, 2025, paperwork." *See Groulx*, 2024 U.S. Dist. LEXIS 207092, at *7; *Mich. State*, 103 F.3d at 1249. Finally, to the extent Plaintiffs intended to ask the Court to stop the Kentucky case from proceeding through this request, the Court cannot do so for the reasons discussed *supra* p. 15–17.

Regarding Plaintiffs' request that the Court order Defendants to cease all contact with Plaintiffs, Plaintiffs have again failed to direct the Court to any authority that would empower it provide them with their requested relief. Accordingly, this request must also be denied. *See Groulx*, 2024 U.S. Dist. LEXIS 207092, at *7; *Mich. State*, 103 F.3d at 1249.

Turning to Plaintiffs' actual requests for sanctions, they, too, must be denied. "[T]he central purpose of Rule 11 is to deter baseless filings in District Court and…streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Rule 11 does not apply to pleadings, motions, or any other papers filed in state courts, nor does it apply to conduct outside of filings. *See Roddy v. Black*, 516 F.2d 1380, 1383 (6th Cir. 1975) ("The precise terms of Rule 11 are not constitutionally applicable to the state courts."); FED. R. CIV. P. 11(b). In this case, Plaintiffs seek sanctions based on allegedly harassing filings made in the Kentucky case. [Doc. 15 at 2]. Because these filings do not fall within Rule 11's scope, Plaintiffs are not entitled to Rule 11 sanctions. *See Roddy*, 516 F.2d at 1383; FED. R. CIV. P. 11(b). Similarly, "§ 1927 'does not reach conduct that cannot be construed as part of the proceedings before the court issuing § 1927 sanctions.'" *Shefa, LLC v. City of Southfield*, No. 2:20-cv-11038-TGB-EAS, 2021 U.S. Dist. LEXIS 185222, at *31 (E.D. Mich. Sep. 28, 2021) (quoting *Matter of Case*, 937

F.2d 1014, 1023 (5th Cir. 1991) and collecting cases). Because the filings in the Kentucky case are not part of the proceedings before this Court, the Court cannot sanction Defendants under § 1927. *See id.*

Beyond these major requests, Plaintiffs also request a hearing, their costs, and $50,000 in compensatory damages. [Doc. 15 at 2]. Plaintiffs, however, are entitled to none of this relief. Regarding their request for a hearing, the Court again finds that a hearing would be unnecessary. Regarding their request for costs, Plaintiffs are not entitled to such an award as they have not prevailed on their Motion for Sanctions. *See* FED. R. CIV. P. 11 (c)(2) ("If warranted, the court may award to *the prevailing party* the reasonable expenses, including attorney's fees, incurred for the motion." (emphasis added)). Finally, regarding Plaintiffs' request for compensatory damages, such a request is not properly brought through either a motion for sanctions or a motion for injunctive relief.

Accordingly, Plaintiffs' Motion for Sanctions [Doc. 15] is **DENIED**.

## V.     EMERGENCY MOTION TO QUASH [Doc. 16]

Through their Emergency Motion to Quash, Plaintiffs request the Court (1) "[i]mmediately quash the August 1, 2025 court paperwork as unsupported and retaliatory;" (2) "[i]ssue a Temporary Restraining Order and Preliminary Injunction barring Defendants from further contact, service, or harassment pending hearing;" (3) "[s]chedule an emergency hearing withing forty-eight (48) hours on this Motion;" and (4) "[a]ward costs and sanctions against Defendants for their bad faith conduct[.]" [Doc. 16 at 6–7]. Plaintiffs are entitled to none of this relief.

As an initial matter, the Court cannot provide Plaintiffs any of the injunctive relief requested in this Motion because Plaintiffs have again failed to comply with the requirements of either Rule 65(a)(1) or (b)(1). *See* FED. R. CIV. P. 65; *Chapman*, 2021 U.S. Dist. LEXIS 99669, at

*3; *Jones*, 2024 U.S. Dist. LEXIS 183833, at *4–5; *Banks*, 2023 U.S. Dist. LEXIS 151252, at *2–3. Looking beyond this technical failure, the Court cannot quash the "August 1, 2025, court paperwork" because the *Younger* abstention doctrine prohibits the Court from intervening in the Kentucky case. *See supra* p. 15–17. Regarding Plaintiffs' request for a TRO or preliminary injunction barring Defendants from either contacting or serving them, Plaintiffs have failed to cite any authority concerning the Court's power to grant such relief, and the Court is independently unaware of any such authority. Therefore, Plaintiffs' request must be denied. *See Groulx*, 2024 U.S. Dist. LEXIS 207092, at *7; *Mich. State*, 103 F.3d at 1249. Turning to Plaintiffs' request for a hearing, the Court again finds that a hearing is unnecessary. Finally, Plaintiffs are not entitled to sanctions or an award of costs for the reasons discussed *supra* p. 21–22.

Accordingly, Plaintiffs' Emergency Motion to Quash [Doc. 16] is **DENIED**.

## VI. MOTION FOR EXPEDITED DISCOVERY [Doc. 6]

Plaintiffs request the Court permit them to engage in expedited discovery. [Doc. 6]. Given, however, that the Complaint has not been screened pursuant to 28 U.S.C. § 1915, allowing discovery at this time would be premature.

Accordingly, Plaintiffs' Motion for Expedited Discovery [Doc. 6] will be **DENIED WITHOUT PREJUDICE** to refiling *after* the Court has screened the Complaint.

## VII. CONCLUSION

For the foregoing reasons, the Motion for Temporary Restraining Order [Doc. 5], the Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 13], the Motion for Protective Order [Doc. 14], the Motion for Sanctions [Doc. 15], and the Emergency Motion to Quash [Doc. 16] are **DENIED**, and the Motion for Expedited Discovery [Doc. 6] is **DENIED WITHOUT PREJUDICE**.

**SO ORDERED.**

_/s/ Charles E. Atchley, Jr._
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**