UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SCOTT EVERS and SHARON EVERS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:25-CV-199-CEA-DCP |
| ) | |
| TENNESEE DEPARTMENT OF ) | |
| CHILDREN'S SERVICES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER AND REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b) and the Rules of this Court on Plaintiff's Applications to Proceed in Forma Pauperis with Supporting Documentation ("Application") [Docs. 1 & 2], their Complaint [Doc. 3], and the exhibits thereto [Doc. 4 & Docs. 4-1 to 4-7].

For the reasons more fully stated below, the Court **GRANTS** the Applications [**Docs. 1 & 2**] and will therefore allow Plaintiffs to file their Complaint without the payment of costs. The undersigned, however, **RECOMMENDS** that the District Judge **DISMISS** the Complaint [Doc. 3].

**I.     DETERMINATION ABOUT THE FILING FEE**

Plaintiffs have filed Applications [Docs. 1 & 2] with the required detailing of their financial condition. Section 1915 allows a litigant to commence a civil or criminal action in federal court without paying the administrative costs of the lawsuit. *Denton v. Hernandez*, 504 U.S. 25, 27 (1992). The Court's review of an application to proceed without paying the administrative costs of the lawsuit is normally based solely on the affidavit of indigence. *See Gibson v. R.G. Smith Co.*, 915 F.2d 260, 262–63 (6th Cir. 1990) (observing that "the filing of a complaint is conditioned

1

solely upon a person's demonstration of poverty in his affidavit and the question of frivolousness is taken up thereafter"). To proceed without paying the administrative costs, the plaintiff must show by affidavit the inability to pay court fees and costs—it is a threshold requirement. 28 U.S.C. § 1915(a)(1). One need not be absolutely destitute, however, to enjoy the benefit of proceeding in the manner of a pauper, or in forma pauperis. *Adkins v. E. I. DuPont de Nemours & Co., Inc.*, 335 U.S. 331, 342 (1948). An affidavit to proceed without paying the administrative costs is sufficient if it states that the plaintiff cannot, because of poverty, afford to pay for the costs of litigation and still pay for the necessities of life. *Id*. at 339.

The Court finds the Applications are sufficient to demonstrate that Plaintiffs have little income and that their expenses exceed their assets. Considering Plaintiffs' Applications, it appears to the Court that their economic status is such that they cannot afford to pay for the costs of litigation and still pay for the necessities of life. The Court will allow Plaintiffs to proceed in the manner of a pauper. The Court **DIRECTS** the Clerk to file the Complaint in this case without payment of costs or fees. The Clerk **SHALL NOT**, however, issue process at this time.

## II. RECOMMENDATION AFTER SCREENING THE COMPLAINT

Under the Prison Litigation Reform Act of 1995 ("PLRA"), the Court is required to screen complaints. 28 U.S.C. § 1915.[1] To accomplish this end, the Court must evaluate the litigant's indigence, but notwithstanding indigence, a court must dismiss a matter under 28 U.S.C. § 1915(e)(2)(B) if [it] determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who

---

[1] Despite the reference to prisoners, 28 U.S.C. § 1915 requires the Court to screen complaints filed by non-prisoners seeking in forma pauperis status. *McGore v. Wrigglesworth*, 114 F. 3d 601, 608 (6th Cir. 1997) ("Unlike prisoner cases, complaints by non-prisoners are not subject to screening process required by § 1915A. The district court, however, must still screen the complaint under § 1915(e)(2)."), *overruled on other grounds*, *Jones v. Brock*, 549 U.S. 199 (2007).

is immune from such relief." To survive an initial review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v Twombly*, 550 U.S.544, 570 (2007)).

Specifically, under Rule 8(a) of the Federal Rules of Civil Procedure, a pleading must provide:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . . ;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a)(1)–(3). Otherwise, the complaint is subject to dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### A. Summary of the Complaint

Plaintiffs Scott and Sharon Evers filed a pro se Complaint, naming as Defendants: (1) Tennessee Department of Children's Services ("DCS"); (2) Jeremy Crenshaw ("Defendant Crenshaw"), the DCS caseworker, in his individual and official capacities;[2] (3) New Hope Children's Advocacy Center ("CAC"); (4) Magistrate Judge Beddingfield ("Judge Beddingfield"), in his individual capacity; (5) Gina Jenkins ("Defendant Jenkins"), the guardian ad litem ("GAL"),

---

[2] Plaintiffs also refer to Defendant Crenshaw as a "CPS Investigator," which the Court construes to mean a "child protective services investigator" [Doc. 4-1 p. 2].

in her individual capacity; (6) Erin Schaad ("Defendant Schaad"), the guardian ad litem ("GAL") in her individual capacity; (7) Kristen Leonard ("Defendant Leonard"), a DCS caseworker, in her individual capacity; and (8) Margerie Quinn ("Defendant Quinn"), the DCS Commissioner, in her official capacity [Doc. 3 pp. 1–2].[3]

Plaintiffs, who are husband and wife, "bring this action on behalf of themselves and all Tennessee residents subjected to DCS's unconstitutional training practices, including warrantless entries, coerced consent, and evidence destruction, from August 1, 2019, to the present" [*Id*. at 2]. They allege that the class is numerous, there are common questions, Plaintiffs' claims are typical of the class, and a class action is superior [*Id*.].

On July 26, 2022, Plaintiffs state that a therapist reported to DCS that Plaintiff Scott Evers was abusing Plaintiff Sharon Evers's daughter [*Id*. at 3]. Later, on August 1, 2022, Defendant Crenshaw entered Plaintiffs' home without a warrant and "interrogated the children without informing [Plaintiff] Sharon Evers that cooperation was voluntary" [*Id*.; *see also* Doc. 4-1 (outlining the details of the visit)]. Plaintiffs allege that "[o]n August 4, 2022, [Defendant Crenshaw] forged [Plaintiff] Scott Evers'[s] signature on an Immediate Protection Agreement (IPA)" [Doc. 3 p. 3; *see also* Doc. 4-2 (Affidavit of D. Colton Baker); Doc. 4-3 (statement of April Heatherly)]. On the same day, Plaintiffs state that "[Defendant] Crenshaw coerced [Plaintiff] Sharon Evers into signing the IPA by threatening to place her children in foster care" [Doc. 3 p. 3; *see also* Doc. 4-3)]. Plaintiffs contend that "[o]n August 5, 2022, Detective T. Rex Ogle of the Blount County Sheriff's Department cleared Scott Evers of any criminal charges after a thorough investigation, including reviewing his phone and forensic interviews" [Doc. 3 p. 3 (citation

---

[3] Defendant Quinn is not mentioned as a party on page 1 of the Complaint, but Plaintiffs later identify her on page 2 [Doc. 1 pp. 1, 2].

omitted)]. "Despite this clearance, DCS proceeded with the IPA and later placed [Plaintiff] Scott [Evers] on an internal sex offender registry, showing deliberate bad faith" [*Id.*].

Plaintiffs assert that "[Defendant] CAC conducted forensic interviews on August 4, 2022, but deleted common area footage, violating National Standards for CACs[, which] requir[e] retention until the youngest child is 19" [*Id.* (citing Doc. 4-5)]. A few days later, Plaintiffs submit that "[Defendant] Crenshaw contacted [the therapist] to verify the timeline of the allegation, confirming no delay between the allegation and report, yet [he] proceeded with aggressive actions without corroboration" [*Id.* (citing Doc. 4-7)]. "On August 11, 2022, [Plaintiff] Sharon Evers retained Jason Rose as legal counsel to represent her in the Juvenile Court proceedings" [*Id.* (citing Doc. 4-7)].

On September 6, 2022, Judge Beddingfield presided over a hearing, and according to Plaintiffs, "ignored evidence of forgery and constitutional violations, stating[,] '[W]e don't deal with [c]onstitutional issues in this court'" [*Id.* (citing Doc. 4-6)]. Judge Beddingfield then "ordered [Plaintiff] Scott Evers off his premarital property without due process" [*Id.* (citing Doc. 4-6)]. Plaintiffs also claim that Judge Beddingfield denied Plaintiff Scott Evers accommodations under the Americans with Disabilities Act ("ADA") [*Id.* (citing Doc. 4-6)]. At another hearing, on May 2, 2023, Plaintiffs state that the court audio was static, which "suggest[s] evidence tampering by [Judge] Beddingfield or court staff" [*Id.* (citing Doc. 4-6)]. They allege that "DCS placed [Plaintiff] Scott Evers on an internal sex offender registry without criminal charges, causing reputation and financial harm" [*Id.* (citing Doc. 4-3)].

Plaintiffs state that "[o]n April 21, 2023, DCS caseworker [Defendant] Leonard investigated an alleged IPA violation without addressing the underlying fraud of the forged IPA, further perpetuating the harm to Plaintiffs" [*Id.* at 4 (citing Doc. 4-7)]. They further claim that the

5

GALs, "[Defendants] Jenkins and Schaad failed to investigate the children's best interests or advocate for [a minor's] ADA needs" [*Id*. (citing Docs. 4-6 & 4-7)]. Plaintiffs contend that "DCS's actions align with a broader policy of training caseworkers to avoid constitutional protections, as evidenced by [Defendant] Crenshaw's warrantless entry, lack of informed consent, and coercion tactics" [*Id*. (citation omitted)]. The DCS training manual, Plaintiffs allege, "directly contributed to [Defendant] Crenshaw's unconstitutional actions on August 1, 2022, and August 4, 2022" [*Id*.]. Plaintiffs state that "[t]his training is driven by Title IV-E funding incentives, encouraging unnecessary removals to maximize federal reimbursements" [*Id*. (citation omitted)].

Plaintiffs state that "[o]n February 26, 2024, Judge Harrington of the Blount County Circuit Court concluded an appeal hearing from the Juvenile Court proceedings, issuing a final ruling in April 2024" [*Id*.]. "While Judge Harrington's ruling freed Sharon Evers and the children from court-mandated obligations, it failed to address Scott Evers'[s] ongoing harms, including the seizure of his premarital property and separation from his biological son, . . ., perpetuating the effects of DCS's unconstitutional actions" [*Id*. (citation omitted)]. They submit that the "[t]he state court appeal transcript (available from the February 26, 2024, hearing) documents [Defendant] Crenshaw's perjury regarding the IPA forgery, yet Judge Harrington did not remedy this extrinsic fraud, further necessitating federal intervention to address DCS's systemic practices" [*Id*. (citing Doc. 4-7)].

Based on the above, Plaintiffs allege eight causes of action: (1) violation of the Fourth Amendment, (2) violation of the Fourteenth Amendment's Due Process Clause, (3) violation of the ADA, 42 U.S.C § 12132, (4) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, (5) intentional infliction of emotional distress, (6) retaliation in violation of the First Amendment, (7) unconstitutional policy or custom, thereby invoking *Monell* liability,

and (8) violation of the False Claims Act, 31 U.S.C. § 3729 [*Id*. at 5–7]. They seek the following relief:

- A declaratory judgment that DCS's training policies are unconstitutional.

- A permanent injunction barring DCS from training caseworkers to bypass constitutional Protections and enforcing forged IPAs.

- Return of [Plaintiff] Scott Evers'[s] property and restoration of familial association.

- Compensatory damages of $1,500,000 for emotional distress, reputational harm, and business losses.

- Punitive damages to be determined at trial. Treble damages and a relator's share under the FCA.

- Attorney's fees and costs under 42 U.S.C. § 1988, if counsel is retained.

- A jury trial on all issues so triable.

- Removal of Magistrate [Judge] Beddingfield for constitutional violations.

- A public apology from DCS and Jeremy Crenshaw.

- A mandate for DCS to reform its training policies.

- Appointment of a special master or court-appointed expert to evaluate DCS's practices.

- Such other relief as the Court deems just.

[*Id*. at 7].

### B. Screening of the Complaint

As an initial matter, the Court will address Plaintiffs' class action allegations. "A party in federal court must proceed either through licensed counsel or on his own behalf." *Sillah v. Davis*, 252 F. Supp. 2d 589, 597 (W.D. Tenn. 2003) (citations omitted)). Plaintiffs therefore cannot

7

proceed as a class action "because a *pro se* litigant is not an adequate class representative." *Id.*; *Harris v. Exxon Mobil Corp.*, No. 25 CV 414, 2025 WL 1650716, at *2 (N.D. Ohio June 11, 2025) ("[A]s a *pro se* litigant, Plaintiff is not entitled to bring a class action because non-attorneys cannot adequately represent the interests of a class. Accordingly, Plaintiff's complaint fails to state a plausible claim and warrants dismissal to the extent Plaintiff purports to bring his complaint as a class action." (collecting cases)).

The Court will now turn to Plaintiffs' claims.

### 1. Claims under 42 U.S.C. § 1983

The Court notes that Plaintiffs bring a majority of their claims under 42 U.S.C. § 1983. This statute allows a plaintiff to seek redress from state actors for "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; *see also Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To state a claim under § 1983, a plaintiff must allege (1) a deprivation of rights secured by the "Constitution and laws" of the United States and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Starting with DCS, "Plaintiff's claims against . . . DCS are barred by the Eleventh Amendment and, thus, subject to dismissal." *Annette v. Haslam*, No. 3:18-1299, 2020 WL 434162, at *7 (M.D. Tenn. Jan. 27, 2020), *report and recommendation adopted*, No. 3:18-CV-1299, 2020 WL 1061126 (M.D. Tenn. Mar. 5, 2020)). As several courts have explained, "[t]his protection from suit exists unless the United States Congress has validly abrogated the immunity or the state has waived its sovereign immunity and consented to suit." *Id.* (citations omitted). Congress has not done so, and "the State of Tennessee has not consented to waive its immunity in such actions."

*Id*. (citations omitted).[4] DCS is therefore protected from suit by Eleventh Amendment immunity.

With respect to Defendants sued in their official capacities, Defendants Crenshaw and Quinn, Plaintiffs cannot seek monetary damages against them in their official capacities. *See Petty v. Tenn. Dep't of Children's Servs.*, No. 3:19-CV-01085, 2021 WL 396689, at *4 (M.D. Tenn. Feb. 3, 2021) ("[T]herefore, any claims against DCS and its employees in their official capacities for monetary damages are claims against the State and are barred by the Eleventh Amendment."), *report and recommendation adopted*, No. 3:19-CV-1085, 2021 WL 679423 (M.D. Tenn. Feb. 22, 2021). They can, however, seek prospective injunctive relief "against individual state officers in their official capacities for continuing violations of federal law." *Cleaves*, 2021 WL 4176240, at *2 (citations omitted); *see also Mikel v. Nichols*, No. 1:20-CV-345, 2022 WL 18396308, at *4 (E.D. Tenn. Mar. 31, 2022) ("[A] federal court may hear an action against a state official in his or her official capacity if the 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002))).

---

[4] *See also Mikel v. Nichols*, No. 1:20-CV-345, 2022 WL 18396308, at *3 (E.D. Tenn. Mar. 31, 2022) ("As an agency of the state, DCS cannot be sued under § 1983."), *aff'd sub nom. Mikel v. Quin*, 58 F.4th 252 (6th Cir. 2023), *cert. denied sub nom. Mikel v. Nichols*, 143 S. Ct. 2660 (2023); *Cleaves v. Dep't of Child.'s Servs., Child Protective Servs.*, No. 20-2819, 2021 WL 5260364, at *4 (W.D. Tenn. June 10, 2021) ("[The plaintiff's] claims against the State of Tennessee and DCS are barred by the Eleventh Amendment and must be dismissed without prejudice for lack of jurisdiction." (footnote and citation omitted)), *report and recommendation adopted sub nom.*, *Cleaves v. Tennessee*, No. 220CV02819, 2021 WL 4176240 (W.D. Tenn. Sept. 14, 2021); *Hoffman v. Tennessee Dep't of Child. Servs.*, No. 3:20-CV-00900, 2020 WL 6946606, at *2 (M.D. Tenn. Nov. 24, 2020) ("The Court will, therefore, dismiss [the p]laintiffs' Section 1983 claims against the State of Tennessee and DCS without prejudice for lack of jurisdiction." (citation omitted)); *Lance v. Locke*, No. 3:12-CV-757, 2012 WL 4192893, at *5 (M.D. Tenn. Sept. 18, 2012) ("Alternatively and in addition, [the plaintiff's] claims against the Tennessee Department of Children's Services are subject to dismissal because D.C.S. is not a "person" subject to suit under § 1983. Instead, D.C.S. is an agency of the State of Tennessee and, as such, is entitled to Eleventh Amendment immunity." (citation omitted)).

9

Plaintiffs also sue Judge Beddingfield in his individual capacity [Doc. 3 p. 2]. He is protected by juridical immunity. "'Judicial immunity'" is shorthand for the doctrine of absolute immunity that operates to protect judges and quasi-judicial officers alike from suit in both their official and individual capacities." *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) (citing *DePiero v. City of Macedonia*, 180 F.3d 770, 783 (6th Cir. 1999) ("Judges are generally absolutely immune from civil suits for money damages, including § 1983 suits.")).[5]

Plaintiffs also name two GALs, Defendants Jenkins and Schaad, alleging that Defendant Jenkins failed to investigate the children's best interest and that Defendant Schaad failed to

---

[5] Judicial immunity does not apply when a judge takes actions not within his judicial capacity or when a judge takes action, "though judicial in nature, . . . in the complete absence of all jurisdiction." *DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999). There are no allegations that Judge Beddingfield took actions not within his judicial capacity, nor did he act in complete absence of jurisdiction. While Plaintiffs state that he committed "non-judicial acts," such as evidence tampering [Doc. 3 p. 2], their allegations pertain to Plaintiffs' case before him [*See* Doc. 3]. Further, the Court does not have the power to remove Magistrate Judge Beddingfield as Plaintiffs request in the prayer of relief [*Id*. at 7]. *See Toutges v. McKaig*, No. 3:19-CV-352, 2019 WL 5865642, at *5 (E.D. Tenn. Nov. 8, 2019) ("As an overarching matter, the Court notes that it does not have legal authority to intervene in a pending state court action, compel a state court judge to rule differently, or remove a state court judge from a case." (citation omitted)).

Plaintiffs do request injunctive relief in their prayer for relief, but it appears that injunctive relief is directed toward DCS [*See* Doc. 3 p. 7]. But even if the request for injunctive relief is directed toward Judge Beddingfield Section 1983 states, "[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see also Wright v. Finley*, No. 1:19-CV-819, 2021 WL 680243, at *4 (S.D. Ohio Feb. 22, 2021) ("Thus, the statute generally prohibits suits for injunctive relief against judicial officers but provides exceptions for violations of declaratory decrees or the unavailability of declaratory relief."). Plaintiff has not alleged that a declaratory decree was violated or that declaratory relief is unavailable. *See Thompson v. Branch*, No. 1:24-CV-2, 2024 WL 579756, at *5 (S.D. Ohio Feb. 13, 2024) ("All claims for injunctive relief under § 1983 against Judge Branch in her individual capacity should therefore be dismissed with prejudice." (emphasis omitted)), *report and recommendation adopted*, No. 1:24-CV-000002, 2024 WL 4278310 (S.D. Ohio Sept. 24, 2024)*; see also Kelsey v. Sherman*, No. 22 CV 1934, 2022 WL 2441193, at *3 (S.D.N.Y. July 5, 2022) ("Declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order." (quoting *LeDuc v. Tilley*, No. 3:05cv157, 2005 WL 1475334, at *7 (D. Conn. June 22, 2005)).

advocate for a minor's ADA needs [Doc. 3 p. 2]. "Guardians *ad litem* are entitled to [quasi-judicial] immunity when they act within the scope of their roles as 'advocate[s] for the child in judicial proceedings.'" *Arsan v. Keller*, 784 F. App'x 900, 908 (6th Cir. 2019) (quoting *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984)). The Sixth Circuit has recognized that the "failure to grant immunity would hamper the duties of a guardian *ad litem* in his role as advocate for the child in judicial proceedings." *Kurzawa*, 732 F.2d at 1458.[6]

In any event, Plaintiffs' § 1983 claims are time barred. "The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In Tennessee, litigants have one year to file personal injury actions. *Haley v. Clarksville-Montgomery Cty. Sch. Sys.*, 353 F. Supp. 3d 724, 730 (M.D. Tenn. 2018) (citing Tenn. Code Ann. § 28-3-104(a)). "When the statute begins to run, however, is an issue of federal law." *Caudill v. Hamblen Cty.*, No. 2:19-CV-183, 2019 WL 5685205, at *1 (E.D. Tenn. Oct. 31, 2019) (citing *Eidson*, 510 F.3d at 635). "Under federal law, a cause of action accrues, and the limitations period begins to run, when the injury forming the basis of the claim is discoverable." *Id.*

Here, the conduct at issue began on July 26, 2022, and concluded with Judge Harrington's April 2024 final ruling [Doc. 3 p. 5]. Plaintiffs filed suit on May 7, 2025. This is too late. For

---

[6] In *Arsan*, the Sixth Circuit did not address "other threshold issues, like whether [the guardian ad litem] was a state actor." *Arsan*, 784 F. App'x at 908. But previous courts, including the Sixth Circuit have held that GALs are not state actors for purposes of § 1983. *See Reguli v. Guffee*, 371 F. App'x 590, 601 (6th Cir. 2010) (agreeing with a decision from the Ninth Circuit that held a GAL was not a state actor (citing *Kirtley v. Rainey*, 326 F.3d 1088, 1095 (9th Cir. 2003)); *Jacob v. Ronayne*, No. 20-13370, 2022 WL 90852, at *2 (E.D. Mich. Jan. 7, 2022) (explaining that because GALs serve as independent investigators and sources of information and they represent the best interests of the child, they are not state actors under § 1983).

11

instance, Plaintiffs claim that Defendant Crenshaw entered their house without a warrant on August 1, 2022—2.5 years before they filed suit. *See Hornback v. Lexington-Fayette Urb. Cnty. Gov't*, 905 F. Supp. 2d 747, 749 (E.D. Ky. 2012) ("[T]he Court concludes that Plaintiff had complete knowledge of the unlawful search and seizure of his bedroom on the day of the search, August 31, 2010. Therefore, his cause of action accrued on this date, and the applicable statute of limitations bars any action brought by Plaintiff after one year had passed."), *aff'd*, 543 F. App'x 499 (6th Cir. 2013). They claim that "[e]veryone received the final ruling from Judge Harrington" in April 2024 [Doc. 4-7 p. 3]. Plaintiffs' § 1983 claims, are therefore, time barred.

### 2. Claims under the ADA

Plaintiffs also allege violations of the ADA during court proceedings, stating that Judge Beddingfield denied Plaintiff Scott Evers accommodations [Doc. 3 pp. 3 & 6]. They also allege that Defendant Schaad neglected a minor's ADA needs [*Id*. at 6].

Under 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132. "The ADA defines 'public entity' as any state or local government or department, agency, special purpose district, or other instrumentality of a state or local government. The definition does not include individuals." *Key v. Grayson*, 163 F. Supp. 2d 697, 715 (E.D. Mich. 2001) (internal citation omitted). Further, "Nearly every court that has considered the issue has held that Title II claims cannot be maintained against state officials in their individual capacities." *Id*. (collecting cases). Plaintiffs' ADA claims fail as a matter of law. *See Baze v. Huddleston*, No. 5:10-CV-00086, 2012 WL 122566, at *4 (W.D. Ky. Jan. 17, 2012) ("[C]laims under the ADA are only actionable against entities or individuals in their official capacities." (citations omitted)).

### 3. Claims under RICO

Plaintiffs claim that Defendants violated RICO. They allege that "Defendants operated a RICO enterprise by training caseworkers to violate constitutional rights, forging documents, and destroying evidence to maximum Title IV-E funds through unnecessary child removals, constituting a pattern of racketeering" [Doc. 3 p. 6]. Plaintiffs claim that the predicate offenses include mail fraud, wire fraud, and obstruction of justice [*Id*.].

RICO allows "[a]ny person injured in his business or property by reason of violation of section 1962 of this chapter may sue therefore in any appropriate United States district court[.]" 18 U.S.C. § 1964(c). The plaintiff must plead: "(1) that there were two or more predicate offenses; (2) that an 'enterprise' existed; (3) that there was a nexus between the pattern of racketeering activity and the enterprise; and (4) that an injury to business or property occurred as a result of the above three factors." *Hooker v. Hooker*, No. 2:11-CV-02252, 2014 WL 2433985, at *7 (W.D. Tenn. May 28, 2014) (citation omitted). Further, "RICO defines racketeering activity to include any act that is indictable under certain provisions of Title 18 of the United States Code, including wire fraud, 18 U.S.C. § 1343, and mail fraud, 18 U.S.C. § 1341." *Id*. "When the alleged racketeering activity is fraud, the elements of a RICO claim must be pleaded with particularity under Fed. R. Civ. P. 9(b)." *Dietz v. Dep't of Soc. Servs. Child Support*, No. 4:23-CV-04114, 2024 WL 1882165, at *8 (D.S.D. Apr. 30, 2024) (quoting *Ill. Farmers Ins. Co. v. Mobile Diagnostic Imaging, Inc.*, 2014 WL 4104789, at *5 (D. Minn. Aug. 19, 2014), *appeal dismissed sub nom. Dietz v. Dep't of Soc. Servs.*, No. 24-2423, 2024 WL 5319097 (8th Cir. July 15, 2024).

"The Sixth Circuit has held that Congress did not abrogate states' sovereign immunity to claims brought under RICO." *Page v. United States*, No. 3:23-CV-00851, 2024 WL 3739401, at *5 (M.D. Tenn. June 17, 2024) (citing *Chaz Constr., LLC v. Codell*, 137 F. App'x 735, 743 (6th

Cir. 2005)), *report and recommendation adopted*, No. 3:23-CV-00851, 2024 WL 3549228 (M.D. Tenn. July 26, 2024). DCS is therefore immune as it is an arm of the State. This too applies to state officials sued in their official capacities for monetary relief. *Thompson v. Whitmer*, No. 21-2602, 2022 WL 168395, at *5 (6th Cir. Jan. 19, 2022) ("So we have previously applied sovereign immunity to bar RICO claims asserted against state officials in their official capacities." (citation omitted)).

But further, even liberally construed, these allegations do not state a plausible RICO violation against Defendants. Plaintiffs simply allege that DCS's training policies are unconstitutional and driven to receive Title IV-E funds, generally asserting that "Defendants use the mail to submit false Title IV-E reimbursement claims" and "electronic communications to coordinate forensic interviews and removals without legal basis" [Doc. 3 p. 6]. In support of the mail fraud claim, Plaintiffs reference "Exhibit H," which does not exist in the record [*see* Doc. 3 *generally*], and in support of the wire fraud claim, they reference "Exhibit G," which is merely Plaintiffs' "General Timeline of Events" [Doc. 4-7]. Without adequately pleading facts showing that the reimbursement claims were false or that the electronic communications were fraudulent, Plaintiffs fail to adequately allege a pattern of racketeering activity. *See Illinois Farmers Ins. Co. v. Mobile Diagnostic Imaging, Inc.*, No. 13-CV-2820, 2014 WL 4104789, at *6 (D. Minn. Aug. 19, 2014) (finding "[i]f plaintiffs have not adequately pleaded facts showing that the insurance claims were fraudulent, then plaintiffs have failed to adequately allege a pattern of racketeering activity—an essential element of their RICO claim") (citation omitted).

Plaintiffs' general allegations are insufficient to state a claim under RICO.

14

Case 3:25-cv-00199-CEA-DCP   Document 24   Filed 09/04/25   Page 14 of 19
PageID #: 247

### 4. Claims under the False Claims Act

Plaintiffs allege a violation of the False Claims Act, 31 U.S.C. § 3729, stating that "Defendants knowingly submitted false claims for Title IV-E reimbursements by removing children without legal basis" [Doc. 3 p. 7 (citations omitted)].

"[T]his Court lacks subject matter jurisdiction to hear a *qui tam* action brought on behalf of the United States by a *pro se* litigant." *McGhee v. Light*, 384 F. Supp. 3d 894, 897 (S.D. Ohio 2019) (quoting *Brantley v. Title First Titling Agency*, No. 1:12-CV-608, 2012 WL 6725592, at *3 (S.D. Ohio Sept. 27, 2012)), *report and recommendation adopted*, No. 1:12CV608, 2012 WL 6725591 (S.D. Ohio Dec. 27, 2012). Indeed, courts "have uniformly held that pro se relators may not prosecute qui tam actions." *Id.* (quoting *Brantley*, 2012 WL 6725592, at *3). The Court therefore lacks jurisdiction over this claim.

### 5. Intentional Infliction of Emotional Distress

Plaintiffs claim intentional infliction of emotional distress under state law [Doc. 3 p. 6]. Considering the above analysis, the undersigned recommends that supplemental jurisdiction not be exercised over this claim. *See McGhee v. Light*, 384 F. Supp. 3d 894, 897–98 (S.D. Ohio 2019) ("Absent a viable federal claim -- or diversity of citizenship -- the Court should decline to exercise supplemental jurisdiction and dismiss Plaintiffs' state law claims . . . without prejudice to refiling those claims in the state court." (citations omitted)); *see also Booker v. City of Beachwood*, 451 F. App'x 521, 522-23 (6th Cir. 2011) ("Once [a] district court dismisse[s] all of the claims over which it ha[s] original jurisdiction, it act[s] squarely within its discretion by declining supplemental jurisdiction over the remaining [state law] claim[s] and dismissing [them] without prejudice.").

### C. August 13, 2025 Letter

On August 13, 2025, Plaintiff Sharon Evers filed a letter that references "whistleblower," "federal witness tampering," intimidation," "harassment," and "retaliation" [Doc. 11 p. 1]. She submits that she moved to Kentucky with her parents while Plaintiffs "sort out the constitutional violations" [*Id*. at 4 (emphasis omitted)]. She claims that "[t]he magistrate gave [her] permission to live there, but [Plaintiff] Scott [Evers] was the sole proprietor of the house, and the property was rightfully his" [*Id*.].

She states that two months after they filed this lawsuit, on July 7, 2025, DCS caseworkers, Anna Pendleton and Jessica Lively, with the assistance of Deputy Williams and Deputy McMurry of the Blount County Sheriff's Department violated Plaintiffs' Fourth Amendment by trespassing on Plaintiff Scott Evers's property without a warrant [*Id*. at 5]. According to Plaintiff Sharon Evers, they violated his Fifth, Sixth, and Fourteenth Amendment rights [*Id*.]. On July 9, 2025, Plaintiff Sharon Evers states that "Cabinet of Health and Family Services (CHFS) caseworkers, Megan B. Haynes, and Tammy E. Nelson trespassed on [her] father's property where [her] children and [she] are currently residing" [*Id*. at 6]. They informed Plaintiff Sharon Evers that they were there on behalf of Tennessee DCS [*Id*.]. While Plaintiff Sharon Evers was on the telephone with an intake person at the Federal Bureau of Investigation, "Deputy Hollenbeck and Deputy Foster from Madison County Sheriff Department arrived to ask for Scott Evers" [*Id*.]. She states that they violated her rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments and that they violated 18 U.S.C. § 1512 [*Id*.]. Later, on July 25, 2025, Megan B. Haynes ("Ms. Haynes") and Skyler Hayes ("Mr. Hayes") arrived at Plaintiff Sharon Evers's property, along with Deputy Pfisterer and Deputy Tipton from Madison County Sheriff's Department, to search for Plaintiff Scott Evers [*Id*.] She states that this violated the Fourth Amendment and that there was a Fourth

Amendment violation against her parents because her father told them to leave [*Id*.]. She also alleges harassment under 18 U.S.C. § 1512 [*Id*.].

On August 1, 2025, Deputy Tipton served Plaintiff Sharon Evers with papers and that "[i]t appears that [she is] being summoned to juvenile court to decide [her] fitness as a parent in retaliation for defending [her] children and [her] rights" [*Id*. at 6–7]. Plaintiff Sharon Evers claims that this was an illegal court order and that Ms. Haynes's affidavit against her fails to mention certain facts [*Id*. at 7]. She states that she is "reporting these crimes" and "requesting federal assistance" [*Id*. at 8]. Plaintiff Sharon Evers includes an addendum, stating that a neighbor called her father and reported that "Ms. Haynes has gone about the neighborhood putting cards with requests to contact her in the neighbor's mailboxes" [*Id.*].

As an initial matter, it is not clear if Plaintiff Sharon Evers's August 13 filing was intended to be a supplement to the original Complaint. Rule 15 states, "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense." *See* Fed. R. Civ. P. 15(d). The Sixth Circuit has stated that "Rule 15 sets a liberal policy in favor of permitting parties to amend their pleadings, and courts have interpreted the rule to allow parties to add new claims, defenses, and parties to the lawsuit." *Mattox v. Edelman*, 851 F.3d 583, 592 (6th Cir. 2017) (citation omitted).

Even if the Court were to construe the August 13 letter as a supplemental pleading or part of the original Complaint, it does not comply with Rule 8. Because it is written as a letter, the Court is uncertain whether Plaintiff Sharon Evers intends to file suit against the individuals identified in her letter. As for relief, she seeks "restraining orders to protect [her] family" and she

17

Case 3:25-cv-00199-CEA-DCP    Document 24    Filed 09/04/25    Page 17 of 19
PageID #: 250

would like to press criminal charges [Doc. 11 p. 8]. The District Judge has ruled on a similar request [*see* Doc. 23] and to the extent she asks the Court to press charges, the Court cannot do so. *See Anderson v. TN Internal Affs.*, No. 3:20-CV-00550, 2021 WL 11645257, at *1 (E.D. Tenn. Mar. 5, 2021) ("Finally, the Court cannot grant Plaintiff's request to press charges against Nicky Jordan.").

Further, she claims that Plaintiff Scott Evers's and her parents' constitutional rights were violated.[7] She cannot seek relief on their behalf. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126, (2014) (standing encompasses, among other things, "the general prohibition on a litigant's raising another person's legal rights") (citations omitted)); *see also Moore v. Warren*, No. 13-CV-11831, 2014 WL 1464404, at *2 (E.D. Mich. Apr. 15, 2014) ("[T]he Court notes that federal law generally prohibits *pro se* individuals from representing other litigants."). Moreover, many of the allegations relate to conduct that occurred in Kentucky, and the Court may not have personal jurisdiction over some of the individuals identified in the August 13 letter. And while she cites to federal criminal statutes, they "generally do not confer a private right of action." *Butler v. Karet*, No. 21 CV 981, 2021 WL 3633476, at *2 (N.D. Ohio Aug. 17, 2021) (citation omitted).

Considering that the undersigned recommends dismissal of the original Complaint, and given that it is not clear whether Plaintiff Sharon Evers intended to assert claims against the individuals identified in the August 13 Letter, the undersigned recommends, to the extent she, Plaintiff Scott Evers, or both want to pursue claims against the individuals identified in the August 13 Letter, that they file a separate lawsuit in the appropriate forum.

---

[7]     Plaintiff Scott Evers did not sign this letter.

### D. Amending the Complaint

The Court has considered whether to grant Plaintiffs leave to amend the Complaint. But the Court declines to do so here as Plaintiffs' claims fail as a matter of law.

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's Application to Proceed In Forma Pauperis [**Docs. 1 & 2**]. But no process shall issue until the District Judge has ruled upon this Report and Recommendation[8] because the undersigned **RECOMMENDS**[9] that the Amended Complaint [Doc. 3] be **DISMISSED** in its entirety.

Respectfully submitted,

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

---

[8] This matter is to be presented to the Chief District Judge pursuant to this Report and Recommendation under the authority of *Gibson v. R.G. Smith Co.*, 915 F.2d 260, 263 (6th Cir. 1990), wherein the Court of Appeals states that such matters proceed automatically to a district judge for examination of the complaint after a magistrate judge has granted the petition to proceed without prepayment of costs.

[9] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153–54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).