# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| SCOTT EVERS, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 3:25-cv-199 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| TENNESSEE DEPARTMENT OF | ) | Magistrate Judge Poplin |
| CHILDREN'S SERVICES, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are (i) Plaintiff Scott Evers's first "Motion for Leave to File Out of Time" [Doc. 27]; (ii) Scott Evers's "Objections to Magistrate Judge's Report and Recommendation" [Doc. 28]; (iii) Scott Evers's second "Motion for Leave to File Out of Time" [Doc. 29]; (iv) Scott Evers's "Motion for Reconsideration Under FRCP 59(e)" [Doc. 30]; and (v) Scott Evers and Plaintiff Sharon Evers' "Motion to Show Cause for Reconsideration of Dismissal, Excuse Late Filing Due to Excusable Neglect, and Reinstatement of Case" [Doc. 31].

For the following reasons, Scott Evers's first "Motion for Leave to File Out of Time" [Doc. 27] will be **GRANTED**. Therefore, the Court will treat the "Objections to Magistrate Judge's Report and Recommendation" [Doc. 28] as timely filed. The Court will further withdraw its prior Order adopting the Report and Recommendation [Doc. 25] and replace it with this Memorandum Opinion and Order wherein the Court considers the merits of Scott Ever's Objections. Regarding these Objections [Doc. 28], they will be **SUSTAINED IN PART** and **OVERRULED IN PART**. And as for the remaining motions [Docs. 29, 30, 31], they will be **DENIED AS MOOT**.

## I. BACKGROUND

Plaintiffs Scott and Sharon Evers filed suit on May 7, 2025, generally alleging that a 2022 investigation into sexual abuse allegations against Scott Evers and a subsequent Blount County Juvenile Court case regarding the same were marred by statutory and constitutional violations. [*See generally* Doc. 3]. Alongside the Complaint and its exhibits, Plaintiffs filed, among other things, individual motions for leave to proceed *in forma pauperis*, [Docs. 1, 2], and a motion for a temporary restraining order and preliminary injunction, [Doc. 5].

Before the Court could rule on Plaintiffs' *in forma pauperis* motions, Sharon Evers filed additional materials with the Court on August 13, 2025. Specifically, she filed (i) a letter detailing what she alleged to be additional unlawful conduct on the part of both Tennessee and Kentucky officials, (ii) multiple "No Trespass Notices" and "Violation Warnings," and (iii) a letter written by her father with related text messages attached. [Docs. 11 through 11-3]. Scott Evers did not sign the August 13, 2025, letter.

Over the next several days, Plaintiffs filed multiple new motions with the Court, including one seeking additional injunctive relief, [Doc. 13], and another seeking permission to file electronically, [Doc. 20]. The Court granted Plaintiffs permission to file electronically, [Doc. 22], but denied both their new and original motions for injunctive relief, [Doc. 23].

On September 4, 2025, the Magistrate Judge entered an Order and Report and Recommendation that (1) granted Plaintiffs leave to proceed *in forma pauperis* and (2) recommended the Court dismiss all of Plaintiffs' claims in accordance with 28 U.S.C. § 1915(e)(2)(B). [Doc. 24]. Plaintiffs did not timely object to the Report and Recommendation. Consequently, the Court adopted the Report and Recommendation as unobjected to and dismissed all of Plaintiffs' claims on September 24, 2025. [Doc. 25].

Four days later, Scott Evers, and only Scott Evers, filed a "Motion for Leave to File Out of Time" seeking permission to file a purportedly attached "Motion for Reconsideration." [Doc. 27]. No such motion was attached to the "Motion for Leave to File Out of Time" [Doc. 27]. But Scott Evers, and again only Scott Evers, did file "Objections to Magistrate Judge's Report and Recommendation" less than an hour later. [Doc. 28].

Scott Evers filed two additional motions the next day. He first filed a verbatim copy of his "Motion for Leave to File Out of Time." [Doc. 29]. Approximately four minutes after this motion was filed, Scott Evers filed a "Motion for Reconsideration under FRCP 59(e)" asking the Court to reconsider its denial of various of motions, including his and Sharon Evers' motions for injunctive relief. [Doc. 30]. Thereafter, the case went quiet until December 24, 2025, when both Scott and Sharon Evers filed a "Motion to Show Cause for Reconsideration of Dismissal, Excuse Late Filing Due to Excusable Neglect, and Reinstatement of Case" seeking (i) an order directing the Court and the Defendants to show cause why the previous late filings should not be excused, (ii) reinstatement of the case, and (iii) an expedited hearing. [Doc. 31].

The Court is now prepared to rule on each of these motions. The Court will start with Scott Evers's first "Motion for Leave to File Out of Time" [Doc. 27] before then turning to his "Objections to Magistrate Judge's Report and Recommendation" [Doc. 28], the resolution of which will moot the remaining motions.

## II.    LAW AND ANALYSIS

### A.  Scott Evers's First "Motion for Leave to File out of Time" [Doc. 27]

Before turning to the substance of Scott Evers's first "Motion for Leave to File Out of Time" [Doc. 27], the Court finds it necessary to first clarify how it construes the motion. As noted above, Scott Evers filed two identical "Motions for Leave to File Out of Time." [*Compare* Doc.

27, *with* Doc. 29]. Each of these motions, however, is followed by a different document. The first is followed by Scott Evers's untimely "Objections to Magistrate Judge's Report and Recommendation" [Doc. 28] while the second is followed by his "Motion for Reconsideration under FRCP 59(e)" [Doc. 30]. Considering this, Scott Evers's pro se status, and the fact that the grounds identified in the "Motions for Leave to File Out of Time" are equally applicable to both Scott Evers's "Objections to Magistrate Judge's Report and Recommendation" [Doc. 28] and his "Motion for Reconsideration under FRCP 59(e)" [Doc. 30], the Court finds it appropriate to liberally construe Scott Evers's first "Motion for Leave to File Out of Time" [Doc. 27] as seeking leave to belatedly file his "Objections to Magistrate Judge's Report and Recommendation" [Doc. 28]. With this construction in mind, the question the Court must answer is whether Scott Evers has shown good cause and excusable neglect for not timely objecting to the Report and Recommendation. FED. R. CIV. P. 6(b)(1)(B). The Court finds that he has.

Scott Evers represents that after he received permission to file electronically in this case, he experienced difficulties uploading documents through his PACER account. [Doc. 27]. More specifically, Scott Evers represents he attempted to upload documents on September 17, 2025, (which would have made any objection to the Report and Recommendation timely) but was unable to successfully file anything electronically. [*See id.*]. He further represents these issues were not resolved until September 28, 2025, (i.e. *after* his deadline to object to the Report and Recommendation had already expired). [*See id.*]. The Court finds these technical issues, combined with Scott Evers's efforts to resolve them, demonstrate both good cause and excusable neglect for failing to timely object to the Report and Recommendation. Accordingly, Scott Evers's first "Motion for Leave to File Out of Time" [Doc. 27] is **GRANTED**. The Court will treat Scott

4

Evers's "Objections to Magistrate Judge's Report and Recommendation" [Doc. 28] as timely filed and address these objections on the merits. The Court turns to this task now.

**B. Scott Evers's "Objections to Magistrate Judge's Report and Recommendation" [Doc. 28]**

1. *Standard of Review*

When a pretrial matter is dispositive of a party's claim or defense (like the screening of a complaint in accordance with 28 U.S.C. § 1915), the district judge may refer the matter to the magistrate judge for a report and recommendation. FED. R. CIV. P. 72(b)(1); *see* 28 U.S.C.A. § 636(b)(1)(B). The magistrate judge must recommend a disposition, including, if appropriate, proposed findings of fact. FED. R. CIV. P. 72(b)(1). The district judge must then "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make *a de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The district judge may accept, reject, or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with further instructions. *Id.*

"A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004). In the absence of objection, the district court is not obligated to conduct a *de novo* review of a report and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). Moreover, "the district court need not provide *de novo* review where the objections are 'frivolous, conclusive, or general.'" *Mira v. Marshall*, 806 F.2d

5

636, 637 (6th Cir. 1986) (*quoting Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). "The parties have 'the duty to pinpoint those portions of the magistrate's report that the district court must specially consider.'" *Id.*

2. *Analysis*

The Magistrate Judge recommends the Court dismiss each of Plaintiffs' eight claims. Specifically, the Magistrate Judge recommends the Court dismiss Plaintiffs' claims under 42 U.S.C. § 1983 (Counts One, Two, Six, and Seven) as time barred. [*See* Doc. 24 at 11–12]. The Magistrate Judge further states: (i) that Plaintiffs' Section 1983 claims against the Tennessee Department of Children's Services ("TDCS") are barred by the doctrine of sovereign immunity [*id.* at 8–9]; (ii) that Plaintiffs' official capacity Section 1983 claims against TDCS personnel (i.e., Defendant Crenshaw and Defendant Margie Quinn, the TDCS Commissioner) for money damages are similarly barred by sovereign immunity [*id.* at 9]; (iii) that Plaintiffs' individual capacity Section 1983 claims against Defendant Beddingfield, a Blount County Juvenile Court Magistrate who presided over a portion of the at-issue juvenile court case, are barred by the doctrine of judicial immunity [*id.* at 10]; and (iv) that Plaintiffs' claims Section 1983 claims against Defendants Gina Jenkins and Erin Schaad, both guardians ad litem, are barred by quasi-judicial immunity [*id.* at 10–11].

Regarding Plaintiffs' remaining claims, the Magistrate Judge recommends the Court:

- Dismiss Plaintiffs' Americans with Disabilities Act claims (Count Three) on the ground that Plaintiffs cannot not pursue individual capacity ADA claims against the Defendants. [*Id.* at 12];

- Dismiss Plaintiffs' Racketeer Influenced and Corrupt Organizations Act ("RICO") claims (Count Four) on the grounds that (1) any RICO claim against TDCS or its

6

personnel in their official capacities for monetary relief is barred by sovereign immunity and (2) Plaintiffs' allegations—even if liberally construed—fail to state a plausible RICO claim. [*Id.* at 13–14];

- Dismiss Plaintiffs' False Claims Act claims (Count Eight) for lack of subject matter jurisdiction because Plaintiffs, as pro se litigants, cannot prosecute a qui tam action. [*Id.* at 15]; and

- Decline to exercise supplemental jurisdiction over Plaintiffs' state law intentional infliction of emotional distress claim (Count Five). [*Id.*].

Beyond these recommendations, the Magistrate Judge further asserts that Plaintiffs cannot pursue a class action as pro se litigants (something Plaintiffs attempt to do in this case), [*see id.* at 7–8], and recommends that to the extent Sharon Evers intended to assert additional claims through her August 13, 2025, letter and accompanying materials—which the letter and materials do not make clear was Sharon Evers's intent—she and/or Scott Evers should file a separate lawsuit to address those claims, [*id.* at 16–18].

Scott Evers, and only Scott Evers, raises five objections to the foregoing recommendations.[1]

*First*, Scott Evers asserts "[t]he R&R erroneously applies Rooker-Feldman to bar jurisdiction, as Plaintiffs' claims allege independent violations by defendants under color of law, not injuries caused by state court judgments." [Doc. 28 at 1]. As the Magistrate Judge never applies nor even discusses the *Rooker-Feldman* doctrine in the Report and Recommendation, [*see generally* Doc. 24], the Court finds this objection meritless.

---

[1] Because Scott Evers is proceeding pro se and cannot represent Sharon Evers in this matter, *see, e.g.*, *Shaw v. Washington*, No. 1:25-cv-276, 2025 LX 99322, at *14 (W.D. Mich. May 1, 2025), the Court only addresses Scott Evers's objections as they relate to his claims.

7

*Second*, Scott Evers asserts "[t]he R&R applies *Younger* abstention without finding bad faith, ignoring evidence of harassment." [Doc. 28 at 2]. But the Magistrate Judge never applies or discusses *Younger* abstention in the Report and Recommendation. [*See generally* Doc. 24]. So this objection is also meritless.

*Third*, Scott Evers asserts "[t]he R&R grants broad immunities, ignoring exceptions." [Doc. 28 at 2]. Specifically, he appears to argue that sovereign immunity does not bar his claims against TDCS officials for injunctive relief, and that judicial immunity does not apply to his claims against Defendant Beddingfield, which he asserts are premised on non-judicial acts. [*See id.* at 3]. These separate components of Scott Evers's immunity objection will be addressed in turn.

Regarding sovereign immunity, Scott Evers is correct that it does not ordinarily bar official capacity claims against state officials for prospective injunctive relief. *Enbridge Energy, LP v. Whitmer*, 135 F.4th 467, 473 (6th Cir. 2025) ("Under the *Young* doctrine,[2] a suit that claims that a state official's actions violate the constitution or federal law is not deemed a suit against the state, and so is not barred by sovereign immunity, so long as the suit seeks only equitable and prospective relief against a named state official." (internal quotation marks omitted and footnote added)). It is for this reason that the Magistrate Judge does not recommend dismissing Plaintiffs' official capacity claims against TDCS officials based on sovereign immunity. Rather, the Magistrate Judge recommends that Plaintiffs' official capacity claims against TDCS officials *for monetary damages* be dismissed based on sovereign immunity while expressly recognizing that Plaintiffs may "seek prospective injunctive relief against individual state officers in their official capacities for continuing violations of federal law." [Doc. 24 at 9 (internal quotation marks omitted)]. To be sure, the Magistrate Judge does recommend Plaintiffs' Section 1983 claims for injunctive relief be

---

[2] *Ex parte Young*, 209 U.S. 123 (1908).

dismissed, but she does so in the context of the timeliness of Plaintiffs' Section 1983 claims, not in her discussion of sovereign immunity. [*See id.*at 9, 11–12]. Accordingly, this component of Scott Evers's immunity objection is meritless.

Turning to judicial immunity, Plaintiffs allege Defendant Beddingfield violated their rights by deleting or otherwise tampering with audio from a May 2, 2023, hearing in the at-issue Blount County Juvenile Court case. [*See* Doc. 3 at ¶¶ 12, 34, 53]. The Magistrate Judge recommends the Court dismiss Plaintiffs' Section 1983 claims relating to this alleged conduct on the ground that Defendant Beddingfield is entitled to judicial immunity. [Doc. 24 at 10].

Scott Evers objects to this recommendation, arguing that Defendant Beddingfield's alleged tampering with the courtroom audio is a non-judicial act that judicial immunity does not apply to. [Doc. 28 at 3]. It, however, is not clear that the alleged tampering qualifies as a non-judicial act. *See Qualls v. Crow*, No. 24-4004, 2025 LX 74241, at *5 (6th Cir. May 12, 2025) (suggesting the absolute immunity afforded to judges and "those persons performing tasks so integral or intertwined with the judicial process that [they] are considered an arm of the judicial officer who is immune" bars claims premised on the transmission or destruction of court records); *Hargis v. Jones*, 986 F.2d 1421 (6th Cir. 1993) (unpublished table decision) (affirming the dismissal of Section 1983 claims against a clerk on the grounds of quasi-judicial immunity where it was alleged the clerk "lied to the courts about [the plaintiff's] trial records); *Aziz v. Washington*, No. 22-3129, 2023 U.S. Dist. LEXIS 223412, at *5 (E.D. La. Dec. 15, 2023) (noting that courts have held quasi-judicial immunity bars claims against court staff even where it is alleged the staff destroyed court records). Furthermore, even assuming that judicial immunity does not bar claims premised on such conduct, Plaintiffs' Section 1983 claims against Defendant Beddingfield are still time barred, as discussed in relation to Scott Ever's next objection.

9

*Fourth*, Scott Evers objects to the Magistrate Judge recommending his Section 1983 claims be dismissed as untimely without considering either the continuing violation doctrine or the fraudulent concealment doctrine. [Doc. 28 at 3]. But neither of these doctrines apply to Scott Evers's Section 1983 claims. Accordingly, this objection is meritless.

"Section 1983 claims arising in the State of Tennessee are subject to a one-year statute of limitations." *Lowe v. Marshall Cnty.*, No. 25-5403, 2025 LX 516981, at *2 (6th Cir. Dec. 9, 2025). This period "begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009). "'A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.'" *Id.* (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)).

In this case, the conduct underlying Plaintiffs' Section 1983 claims began on August 1, 2022, when Defendant Crenshaw allegedly entered the Plaintiffs' home in violation of the Fourth Amendment, [*see* Doc. 3 at ¶¶ 23; Doc. 4-7 at 1], and ended—at the latest—in April 2024 when "everyone received the final ruling from Judge Harrington" in the Blount County Juvenile Court case,[3] [*see* Doc. 3 at ¶¶ 42–43; Doc. 4-7 at 3]. Plaintiffs, however, did not file suit until May 7, 2025, i.e., more than a year *after* the Blount County Juvenile Court case had ended. [*See* Doc. 3]. Thus, as noted by the Magistrate Judge, Plaintiffs' Section 1983 claims are untimely. *Lowe*, No. 25-5403, 2025 LX 516981, at *2.

Scott Evers does not dispute that the conduct underlying his Section 1983 claims occurred more than a year before he and Sharon Evers filed suit. [*See* Doc. 28 at 3]. But he argues that his Section 1983 claims are nevertheless timely under the continuing violation doctrine and the

---

[3] Sharon Evers did discuss more recent alleged misconduct in her August 13, 2025, letter. [*See* Doc. 11]. But even if these allegations could reasonably be considered as part of a supplemental pleading—which it is not clear they can be—Sharon Evers is the only one who signed the August 13, 2025, letter meaning Scott Evers cannot rely on its allegations top supplement *his* claims.

fraudulent concealment doctrine. [*Id.*]. More specifically, he argues the Defendants' conduct amounts to a continuing violation because he is continuing to suffer the "ongoing harms" of the Defendants' actions. [*Id.*]. He further argues that Defendant Crenshaw's alleged forgery of his signature and Defendant Beddingfield's alleged destruction of courtroom audio are examples of fraudulent concealment that entitle him to the tolling of his limitations period. [*See id.*]. Scott Evers is wrong on both accounts.

Starting with the continuing violation doctrine, "[a] continuous violation exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009) (internal quotation marks omitted). Importantly, "'[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.'" *Id.* (quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)). And here, Scott Evers's claimed "ongoing harms" are nothing more than "continual effects" from the Defendants' allegedly unlawful conduct. Accordingly, the continuing violations doctrine does not apply to Scott Evers's Section 1983 claims.

Turning to the fraudulent concealment doctrine, it tolls the applicable statute of limitations if it is shown:

> 1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and (4) that the defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

11

*Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 462–63 (Tenn. 2012) (internal quotation marks and footnotes omitted).[4] When each of these elements is met, "[t]he statute of limitations is tolled until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim." *Id.* at 463. Then, "the original statute of limitations begins to run anew, and the plaintiff must file his or her claim within the statutory limitations period." *Id.*

Assuming without deciding that the fraudulent concealment doctrine applies to Defendant Crenshaw's alleged forging of Scott Evers's signature and Defendant Beddingfield's alleged destruction of courtroom audio, Scott Evers's Section 1983 claims are still untimely. Regarding Defendant Crenshaw's alleged forgery, the Complaint alleges this conduct was brought to the Blount County Juvenile Court's attention on September 6, 2022. [Doc. 3 at ¶ 32]. Thus, even if this alleged forgery tolled the limitations period for some time, that tolling ended by September 6, 2022, at the latest, and any Section 1983 claim arising from this conduct would have needed to be brought on or before September 6, 2023, to be timely. Regarding Defendant Beddingfield's alleged destruction of courtroom audio, Scott Evers complained about this alleged conduct to the Tennessee Board of Professional Responsibility on March 24, 2024. [Doc. 4-6]. Accordingly, the tolling of any Section 1983 claims related to this conduct ended on March 24, 2024, at the latest, and any Section 1983 claim arising from this conduct would have needed to be brought on or before March 24, 2025, to be timely. And as the Court has already noted, Scott and Sharon Evers

---

[4] Just as state law governs the limitations period for Section 1983 claims, so too does it govern "closely related questions of tolling[.]" *Reguli v. Russ*, No. 3:22-cv-00896, 2023 U.S. Dist. LEXIS 166288, at *29 (M.D. Tenn. Sep. 19, 2023) (internal quotation marks omitted). Accordingly, Tennessee's fraudulent concealment doctrine can serve, in appropriate circumstances, to toll the limitations period for a Section 1983 claim. *See id.*

did not file suit until May 7, 2025. [*See* Doc. 3]. Therefore, the fraudulent concealment doctrine does not save any of Scott Evers's Section 1983 claims.

*Fifth*, Scott Evers objects to the Magistrate Judge recommending dismissal of his RICO, False Claims Act, and class action claims, arguing that he should be permitted to amend these claims as a pro se plaintiff. [Doc. 28 at 3–4]. Only one of these sub-objections has any degree of merit.

Starting with the False Claims Act claims, the Magistrate Judge recommends their dismissal on the grounds the Court lacks subject matter jurisdiction over qui tam actions brought by pro se litigants. [Doc. 24 at 15 (citing *McGhee v. Light*, 384 F. Supp. 3d 894, 897 (S.D. Ohio 2019))]. An amended pleading would not cure this jurisdictional defect. Instead, Scott Evers would need to acquire counsel to pursue his False Claims Act claims. *See McGhee*, 384 F. Supp. 3d at 897. Considering this and that dismissal for lack of subject matter jurisdiction is without prejudice, *see Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005) ("[D]ismissals for lack of jurisdiction should generally be made without prejudice.), the Court agrees with the Magistrate Judge that dismissal of the False Claims Act claims is appropriate in this case. If Scott Evers wants to pursue his False Claims Act claims, he may do so through a separate suit where he is represented by counsel.

Turning to the class actions claims, Plaintiffs attempt to bring a Section 1983 class action "on behalf of themselves and all Tennessee residents subjected to [T]DCS's unconstitutional training practices, including warrantless entries, coerced consent, and evidence destruction, from August 1, 2019, to the present." [Doc. 3 at ¶ 17; *see also id.* at ¶¶ 18–21]. But "a pro se plaintiff cannot prosecute a class action because a pro se litigant is not an adequate class representative." *Skudnov v. United States Dep't of Hous. and Urb. Dev.*, No. 3:15-CV-100-JHM, 2015 U.S. Dist. LEXIS 81642, at *4 (W.D. Ky. June 24, 2015) (collecting cases). Furthermore, even if it was

13

sometimes permissible for pro se litigants to serve as class representatives—which it is not—Scott Evers could not serve as a class representative in this case because his Section 1983 claims are time barred, and "[a] person cannot serve as a class representative if she has no individual claims against the defendant." *Dillard v. Baptist Mem'l Healthcare Corp.*, No. 06-2377, 2013 U.S. Dist. LEXIS 5625, at *5 (W.D. Tenn. Jan. 15, 2013) (citing FED. R. CIV. P. 23(a)(3)). An amended pleading could not cure these issues. Accordingly, Scott Evers's objection to the recommended dismissal of any class action claims is meritless.

Looking finally to Plaintiffs' RICO claims, the Magistrate Judge recommends these claims be dismissed based on Plaintiffs' failure to state a plausible claim. [Doc. 24 at 13–14]. More specifically, the Magistrate Judge states that although Plaintiffs generally (and in a conclusory manner) assert "that 'Defendants use the mail to submit false Title IV-E reimbursement claims' and 'electronic communications to coordinate forensic interviews and removals without legal basis[,]'" [*id.* at 14 (quoting Doc. 3 at 6)], they never "plead[] facts showing that the reimbursements were false or that the electronic communications were fraudulent," as is needed to "adequately allege a pattern of racketeering activity[,]" [*id.* (citing *Illinois Farmers Ins. Co. v. Mobile Diagnostic Imaging, Inc.*, No. 13-CV-2820, 2014 WL 4104789, at *6 (D. Minn. Aug. 19, 2014))]. The Magistrate Judge further notes that to the extent Plaintiffs bring RICO claims against TDCS and/or state officials sued in their official capacity for monetary relief, such claims are barred by the doctrine of sovereign immunity. [*See id.* at 13–14].

Scott Evers objects to the recommended dismissal of his RICO claims on the grounds that Exhibits B and E to the Complaint provide the information necessary to state a plausible RICO claim. [*See* Doc. 28 at 4]. He further appears to argue that in the event his RICO claim is deficient, he should be allowed to file an amended pleading given his pro se status. [*See id.*]. Putting aside

14

for a moment that Scott Evers's objection does not even acknowledge the Magistrate Judge's sovereign immunity analysis (which is a correct statement of the law), Exhibits B and E do not address the allegations the Magistrate Judge finds are lacking, namely that the Title IV-E reimbursements were false or that the Defendants' electronic communications were fraudulent. [*See generally* Docs. 4-2, 4-5]. And without these allegations, the Magistrate Judge is correct that Plaintiffs have failed to state a plausible RICO claim. *Ill. Farmers Ins. Co.*, 2014 U.S. Dist. LEXIS 114745, at *16 ("If plaintiffs have not adequately pleaded facts showing that the…claims were fraudulent, then plaintiffs have failed to adequately allege a pattern of racketeering activity — an essential element of their RICO claim."). Therefore, Scott Evers's argument that he has stated a plausible RICO claim is meritless.

That said, the Sixth Circuit has cautioned "that district courts should not lightly dismiss pro-se complaints with prejudice and without leave to amend" provided the plaintiff has "an arguable claim" *Coleman v. Kent*, No. 24-1737, 2025 LX 287041, at *6 (6th Cir. June 26, 2025) (internal quotation marks omitted); *see also LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[A] district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under [Section 1915]."). Here, the Court doubts whether Scott Evers could state a plausible RICO claim if he was either granted leave to amend or if his RICO claim was dismissed without prejudice such that he could file a new lawsuit. Nevertheless, considering the Sixth Circuit's admonition not to dismiss pro se claims "with prejudice and without leave to amend" lightly, *see Coleman*, 2025 LX 287041, at *6, the Court will dismiss Scott Evers's RICO claims against the Defendants not entitled to sovereign immunity without prejudice to refiling. Furthermore, because the Sixth Circuit's admonition applies with equal force to Sharon Evers's RICO claims against the Defendants not entitled to sovereign immunity, the Court will dismiss

15

those claims without prejudice as well notwithstanding the fact that Sharon Evers did not object to the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985) (stating a district judge may review unobjected to portions of a report and recommendation *sua sponte*).

*     *     *

For the foregoing reasons, Plaintiff Scott Evers's "Objections to Magistrate Judge's Report and Recommendation" [Doc. 28] are **SUSTAINED IN PART** and **OVERRULED IN PART**. Specifically, Scott Evers's Objections are sustained in that the Court will dismiss his RICO claims against the Defendants not entitled to sovereign immunity[5] without prejudice and overruled in all other respects. The Court will similarly dismiss Plaintiff Sharon Evers's RICO claims against the Defendants not entitled to sovereign immunity without prejudice notwithstanding the fact Sharon Evers did not object to the Report and Recommendation.[6]

### C. Remaining Motions [Docs. 29, 30, 31]

Because the resolution of Scott Evers's "Objections to Magistrate Judge's Report and Recommendation" [Doc. 28] still results in the dismissal of this action, the remaining motions [Docs. 29, 30, 31] are moot. Accordingly, Scott Evers's second "Motion for Leave to File Out of Time" [Doc. 29]; his "Motion for Reconsideration Under FRCP 59(e)" [Doc. 30]; and his and Sharon Evers' "Motion to Show Cause for Reconsideration of Dismissal, Excuse Late Filing Due to Excusable Neglect, and Reinstatement of Case" [Doc. 31] are each **DENIED AS MOOT**

---

[5] The Defendants entitled to sovereign immunity are: (i) TDCS; (ii) Defendant Crenshaw in his official capacity; and (iii) Defendant Quinn in her official capacity.

[6] For the avoidance of any doubt, the dismissal of Plaintiffs' RICO claims against the Defendants not entitled to sovereign immunity without prejudice should not be construed as stating or even suggesting that these claims are meritorious. Rather, these claims are being dismissed without prejudice only because of Plaintiffs' pro se status and the Sixth Circuit's preference for allowing pro se litigants the opportunity to attempt to cure defects in their pleadings.

16

## III. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** the following:

1. Plaintiff Scott Evers's first "Motion for Leave to File Out of Time" [Doc. 27] is **GRANTED**;

2. The Court hereby **WITHDRAWS** its prior Order adopting the Report and Recommendation as unobjected to [Doc. 25];

3. Scott Evers's "Objections to Magistrate Judge's Report and Recommendation" [Doc. 28] are **SUSTAINED IN PART** and **OVERRULED IN PART;**

4. Plaintiffs' claims under 42 U.S.C. § 1983 (Counts One, Two, Six, and Seven) are **DISMISSED WITH PREJUDICE**;

5. Plaintiffs' claims under the Americans with Disabilities Act (Count Three) are **DISMISSED WITH PREJUDICE**;

6. Plaintiffs' claims under the False Claims Act (Count Eight) are **DISMISSED WITHOUT PREJUDICE**;

7. Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act (Count Four) are **DISMISSED WITH PREJUDICE** as to Defendants TDCS, Jeremy Crenshaw (in his official capacity), and Margie Quinn (in her official capacity). Plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act (Count Four) are **DISMISSED WITHOUT PREJUDICE** as to all other Defendants;

8. Plaintiffs purported class action claims are **DISMISSED WITHOUT PREJUDICE** as to the proposed class members other than Plaintiffs and **DISMISSED WITH PREJUDICE** as to Plaintiffs;

9. To the extent Plaintiff Sharon Evers intended her August 13, 2025, letter and accompanying documents [Docs. 11 through 11-3] to serve as a supplemental pleading, the claims asserted therein are **DISMISSED WITHOUT PREJUDICE**;

10. The Court **DECLINES** to exercise supplemental jurisdiction over Plaintiffs' intentional infliction of emotional distress claims (Count Five). These claims are therefore **DISMISSED WITHOUT PREJUDICE**;

11. Plaintiff Scott Evers's second "Motion for Leave to File Out of Time" [Doc. 29] is **DENIED AS MOOT**;

12. Plaintiff Scott Evers's "Motion for Reconsideration Under FRCP 59(e)" [Doc. 30] is **DENIED AS MOOT**; and

13. Plaintiffs Scott and Sharon Evers' "Motion to Show Cause for Reconsideration of Dismissal, Excuse Late Filing Due to Excusable Neglect, and Reinstatement of Case" [Doc. 31] is **DENIED AS MOOT**.

An Amended Judgment shall enter. This case remains closed.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**